**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-60597
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

versus

JOSE RAMIRO RODRIGUEZ a/k/a
Ramiro Jose Rodriquez,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

( August 22, 1995 )

Before POLITZ, Chief Judge, JONES and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:[*]

Jose Ramiro Rodriguez appeals the district court's two-point sentencing adjustment under U.S.S.G. §2D1.1(b)(1) for possession of a weapon during a drug transaction; its denial of a three-point downward adjustment under U.S.S.G. §3E1.1 for acceptance of responsibility; its determination of the quantity of drugs involved in the offense; and its denial of his post-sentencing motion to withdraw his guilty plea agreement. Finding no error, we affirm.

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

Background

On January 31, 1994, undercover police investigators Braulio Garza and Raul Tanguma met with Rene Acevedo and a confidential informant to negotiate the sale of 500 grams of cocaine for an agreed price.[1]  Acevedo informed the investigators that a friend, Rodriguez, wanted to purchase the cocaine, but that he insisted that the transaction be consummated at his home.

Upon arriving at the home the officers informed Acevedo that they needed one hour to produce the cocaine.  They left and returned with a package of cocaine which they showed to Acevedo just outside the home.  Leaving the package in the car with Tanguma, Garza and the CI followed Acevedo into Rodriguez's home where Garza demanded that he be shown the purchase money.  Rodriguez led Garza to his bedroom where he retrieved a shaving kit containing a sandwich bag full of one hundred dollar bills.  Garza then asked the CI to tell Tanguma to bring in the cocaine, the prearranged arrest signal for a nearby surveillance team.  Acevedo and Rodriguez were arrested.  Rodriguez had two grams of cocaine and $3500 on his person.  A .25 caliber handgun, 50 rounds of ammunition, and cash totaling $8337 were found in Rodriguez's bedroom, the room to which Rodriguez retreated when the arresting agents entered the house.

Rodriguez pleaded not guilty and proceeded to trial.  After selection of the jury, he agreed to plead guilty to conspiracy to

---

[1]The record is unclear whether the price was to be $5000 or $8000.

possess with intent to distribute cocaine[2] and to being a felon in possession of a weapon.[3] In return, the government agreed to dismiss three other charges, recommend a downward adjustment for acceptance of responsibility under U.S.S.G. §3E1.1, stipulate that the amount of cocaine involved was 200 grams, and not seek an upward sentencing departure.

At sentencing the trial judge denied a reduction for acceptance of responsibility, added two points for possession of a gun during the charged offense, and found that the relevant quantity of drugs was 500 grams. The guideline application resulted in a sentencing range of 97 to 121 months and the district court imposed a sentence of 121 months imprisonment, followed by three years of supervised release. Rodriguez then moved to withdraw his plea. The district court denied the motion and Rodriguez timely appealed.

## Analysis

Rodriguez first challenges the two-level increase in his offense level for possession of a firearm during a drug offense under U.S.S.G. §2D1.1(b)(1). Noting that the pistol was never displayed during the transaction and was unloaded when discovered by the arresting officers, Rodriguez contends that he never possessed the gun and that it was not connected to the transaction within the meaning of §2D1.1.

The district court's decision to apply §2D1.1(b)(1) is essentially a factual determination reviewable under the clearly

---

[2] 21 U.S.C. §§841(a)(1), (b)(1)(c), 846 (1988).

[3] 18 U.S.C. §§922(g)(1), 924(a)(2) (1988 & Supp. V 1993).

3

erroneous standard.  If the weapon was present at the scene of the transaction, the adjustment should be applied unless it is clearly improbable that the weapon was connected to the offense.[4]  The .25 caliber pistol was readily accessible to Rodriguez during the drug transaction, having been placed on top of an armoire in his bedroom, within a few feet of where Rodriguez revealed the "buy" money to Garza and where he retreated when the arresting officers arrived.  That the weapon was not brandished and was unloaded does not negate a finding of possession under §2D1.1(b)(1).[5]  The dispositive factor is the accessibility of the weapon to the defendant.[6]  The district court did not clearly err in finding Rodriguez to be in possession of the firearm during the drug transaction.

Rodriguez next contends that the court erred in denying him a downward adjustment in his offense level for acceptance of responsibility.  We are not persuaded.  The record fully supports this factual finding, based on the conduct of Rodriguez both before and after his entry of the guilty plea and up to the time of sentencing.[7]

---

[4] U.S.S.G. §2D1.1 n. 3.

[5] **United States v. Mitchell**, 31 F.3d 271 (5th Cir.)(citing **United States v. Paulk**, 917 F.2d 879 (5th Cir. 1990)), **cert. denied**, 115 S.Ct. 455 (1994). The record reflects that loose ammunition for the pistol was laying nearby and that such ammunition could have been loaded into the pistol and fired, albeit only one round at a time.

[6] **United States v. Menesses**, 962 F.2d 420 (5th Cir. 1992).

[7] **United States v. Diaz**, 39 F.3d 568 (5th Cir. 1994)(concluding that waiting until the eve of trial to plead guilty and denying full extent of charged conspiracy supported trial court's decision

Rodriguez also challenges the district court's conclusion that, for sentencing, the relevant conduct involved 500 grams of cocaine.  Although the government and Rodriguez stipulated in the plea agreement that the quantity was 200 grams, the district court is not bound by such stipulations and "may with the aid of the presentence report, determine the facts relevant to sentencing."[8]

The record reflects that the undercover investigators negotiated for the sale of 500 grams of cocaine for either $5,000 or $8,000.  The cash "flashed" to the investigators by Rodriguez and later seized by the arresting officers totaled $11,837, obviously sufficient to cover either price.  The supervising officer of the investigation testified that the undercover investigators negotiated for the sale of 500 grams of cocaine.[9] The district court did not clearly err in finding the amount of cocaine involved in the offense was 500 grams.

Finally, Rodriguez asserts that the district court erred in denying his post-sentence motion to withdraw his plea, a motion obviously based on the fact that he did not receive the sentence which he had hoped to receive.  The court's refusal to follow the plea agreement neither denied Rodriguez due process nor breached

---

to deny downward adjustment under §3E1.1(a) and (b)).

[8]U.S.S.G. §6B1.4(d) (1994). See **United States v. Garcia**, 902 F.2d 324 (5th Cir. 1990).

[9]At sentencing, the district court may consider hearsay testimony which it finds reliable. See **United States v. Billingsley**, 978 F.2d 861 (5th Cir. 1992), **cert. denied**, 113 S.Ct. 1661 (1993).

the plea agreement.[10]  An attitudinal change after learning the consequences of one's plea is not a sufficient basis to justify the withdrawal of the plea after sentencing.[11]

AFFIRMED.

---

[10]**United States v. Cates**, 952 F.2d 149 (5th Cir.), **cert. denied**, 504 U.S. 962 (1992).

[11]**United States v. Hoskins**, 910 F.2d 309 (5th Cir. 1990)(noting that defendant who seeks to withdraw plea after sentencing must show a fundamental defect resulting in a miscarriage of justice).