**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JONATHAN JOEL ALEXANDER,

    Defendant-Appellant.

No. 99-5074
(N.D. Okla.)
(D.Ct. No. 98-CR-125-H)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **EBEL**, and **LUCERO**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Jonathan Joel Alexander appeals his sentence after pleading

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

guilty to one count of conspiracy to possess with intent to distribute a controlled substance. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Mr. Alexander and his friend Randall Mark Vanlandingham participated in a series of drug transactions in which they both possessed and sold cocaine. On August 27, 1998, authorities filed a one-count criminal complaint charging Mr. Alexander with conspiring to possess with intent to distribute cocaine "beginning in June 1997 and continuing until July 23, 1998." Shortly thereafter, authorities arrested Mr. Alexander on September 1, 1998 in San Clemente, California. On the same day, agents executed a search warrant on Mr. Alexander's San Clemente residence. During the search of Mr. Alexander's bedroom, agents discovered an unloaded 12-gauge pump shotgun and a full box of shotgun shells under the box springs of the bed. The gun and shells were located approximately three to four feet from a dresser where agents seized between one-quarter to one-half kilo of cocaine, over a pound of marijuana, numerous scales, cutting agents and ledgers. On a desk in the bedroom, agents also recovered forty-one individual packages of cocaine.

Mr. Alexander later pled guilty to one count of conspiracy to possess with intent to distribute a controlled substance for the period from June 1997 to July

23, 1998. A federal probation officer prepared a presentence investigation report recommending the district court apply a two-level upward adjustment under United States Sentencing Guidelines § 2D1.1(b)(1) in sentencing Mr. Alexander because he possessed a firearm and ammunition in relation to the offense. Mr. Alexander filed objections to the presentence report suggesting: (1) the two-level upward adjustment under § 2D1.1(b)(1) should not apply because insufficient evidence supported his possession of the firearm in relation to the drug charge; and (2) he is eligible for the two-level "safety value" reduction under U.S.S.G. § 5C1.2 because he meets the criteria therein.

At his sentencing hearing, Mr. Alexander renewed his objection to the two-level upward adjustment under § 2D1.1(b)(1) and request for an additional two-level reduction under § 5C1.2. In response, the government presented the testimony of Drug Enforcement Administration Agent Phillip Springer who testified to the type, quantity and location of the drugs discovered in Mr. Alexander's bedroom and the close proximity of the gun and ammunition to those drugs. He further testified that after agents gave Mr. Alexander his Miranda warning, he told Agent Springer he kept the shotgun "for protection" because people in the neighborhood knew he sold drugs and retained large amounts of cocaine and money in his home. In an attempt to rebut this evidence, Mr.

Alexander presented the testimony of his father who stated he purchased the gun for his son twenty years earlier for the sole purpose of hunting and suggested his son retained the gun for sentimental reasons.

Following the presentation of evidence and the arguments of both parties, the district court concluded that "it was clearly probable [the gun] was used in connection with the drug offense," and credited the testimony of Agent Springer "as a highly credible individual who has made a clear nexus between the drugs, as they existed in the bedroom, and the weapon within a matter of feet, easily accessible thereto." The district court further noted the gun, located under the bed and in close proximity to the drugs in the dresser and the forty-one cocaine packets, was "readily available for use." In sentencing Mr. Alexander, the district court followed the presentence report's recommendation in finding a total offense level of 31 and sentencing him to 120 months in prison.

On appeal, Mr. Alexander argues the district court erred in applying § 2D1.1(b)(1) and failing to apply § 5C1.2 because the government failed to introduce evidence he possessed the gun during the period of the conspiracy. He also argues the government failed to prove by a preponderance of the evidence the gun was "proximate" to the drug offense, because agents did not seize the gun

during the search, the gun was unloaded, and Agent Springer testified he never received information Mr. Alexander brandished the firearm in connection with any crime he committed. Even if the government met its burden of showing the proximity of the gun to the drug offense, Mr. Alexander contends he submitted evidence showing it was merely an unloaded shotgun not intended for anything, but hunting.

## A. Enhancement under U.S.S.G. § 2D1.1.(b)(1)

We begin with a discussion of our standard of review. "We review factual findings under USSG § 2D1.1(b)(1) for clear error; we give due deference to the application of the Guidelines to the facts; [and] we review purely legal questions *de novo." United States v. Vaziri*, 164 F.3d 556, 568 (10th Cir. 1999) (relying on *United States v. Underwood*, 982 F.2d 426, 428 (10th Cir. 1992)). In reviewing the district court's findings of fact, we give due regard to its credibility determinations. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

With these standards in mind, we turn to the sentencing guidelines at issue. "The Sentencing Guidelines provide for an offense level enhancement of two points '[i]f a dangerous weapon (including a firearm) was possessed' during a drug conspiracy." *Vaziri*, 164 F.3d at 568 (quoting U.S.S.G. § 2D1.1(b)(1)).

"'The [enhancement for weapon possession] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" *Id.* (quoting U.S.S.G. § 2D1.1., comment., (n.3)). This means the government bears the initial burden of proving Mr. Alexander's possession of the gun by a preponderance of the evidence. *Id.* (relying on *United States v. Roberts*, 980 F.2d 645, 647 (10th Cir. 1992)). We have held "possession may be satisfied by showing mere proximity to the offense." *Id.*

In this case, the district court credited the testimony of Agent Springer who stated he and other agents discovered the gun and ammunition together in Mr. Alexander's bedroom only a few feet from a dresser full of drugs and in the same room as cocaine packaged for individual resale. Despite the reasons for Mr. Alexander's father purchasing the gun twenty years earlier, the evidence clearly established Mr. Alexander kept the gun in his bedroom for protection against those who knew of his drug transactions. Based on this evidence, we conclude the district court did not err in determining the government met its burden to show Mr. Alexander possessed the gun in connection with his involvement in a conspiracy to possess and distribute cocaine.

In so concluding, we reject Mr. Alexander's argument his gun possession

was not "proximate" to the drug charge because agents found the gun on September 1, 1998, while the conspiracy charge dates only through July of 1998. In determining "possession" in the context of U.S.S.G. § 2D1.1(b)(1), we have held possession may coincide with "acts that were part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993) (holding that even though drug conspiracy charge did not include drugs found in the defendant's apartment, gun found with drugs in apartment could be attributed to the defendant as possession of a firearm during the course of his drug conspiracy distribution activities (quotation marks and citation omitted)); *see also United States v. Maddux*, 189 F.3d 479, 1999 WL 622955 at *2-3 (10th Cir. Aug. 17, 1999) (unpublished opinion) (determining that although the government did not show the defendant possessed the gun during the offense of conviction on April 2, 1998, the government did show by a preponderance of the evidence he possessed the gun on July 6, 1998 during conduct relevant to that offense).

In this case, the search warrant for Mr. Alexander's residence was premised on the charge of conspiracy to distribute cocaine charge. Even though the conspiracy charge involved a period ending just prior to the search date, the discovery of the drugs and gun during the search clearly evidenced "acts that were

part of the same course of conduct or common scheme or plan as the offense of conviction." *Roederer*, 11 F.3d at 982 (quotation marks and citation omitted). Furthermore, Mr. Alexander has not shown it is "clearly improbable" that the weapon relates to the conspiracy charge of intent to possess and distribute cocaine. *Vaziri*, 164 F.3d at 568. We also find the fact agents seized the drugs, but not the gun, irrelevant given the government showed by a preponderance of the evidence the presence of the gun in close proximity to the drugs. Because possession under § 2D1.1(b)(1) does not require evidence Mr. Alexander actually used the gun, we also reject his argument no evidence establishes he brandished the gun during his drug sales. *See Vaziri*, 164 F.3d at 568.

We also reject Mr. Alexander's suggestion an unloaded gun cannot constitute "possession" under § 2D1.1(b)(1). The Sentencing Commission interprets a firearm as "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." *See* U.S.S.G. § 1B1.1, comment. (n.1(e)). In this case, the gun possessed by Mr. Alexander, while unloaded, could readily be converted to expel a projectile simply by loading it with ammunition, which in this case was stored with the gun. Consequently, the district court did not err in applying § 2D1.1(b)(1) to Mr. Alexander's unloaded gun. *See, e.g., United States v. Rodriguez*, 62 F.3d 723, 724-25 (5th

Cir. 1995) (holding unloaded gun, which is readily accessible to defendant, constitutes "possession" within the meaning of § 2D1.1(b)(1)); *United States v. Ewing*, 979 F.2d 1234, 1238 (7th Cir. 1992) (same); *United States v. Heldberg*, 907 F.2d 91, 94 (9th Cir. 1990) (same).

**B. Safety Valve under U.S.S.G. § 5C1.2**

Sentencing Guideline § 5C1.2 adopts the language of 18 U.S.C. § 3553(f) – a "safety valve" statute permitting "courts to sentence less culpable defendants to sentences under the guidelines, instead of imposing mandatory minimum sentences." *United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995). This "safety value" only allows the district court to depart from the statutory minimum sentence if Mr. Alexander meets certain criteria. One of those criteria requires the district court to find Mr. Alexander did not possess a firearm or other dangerous weapon in connection with the offense for which he was convicted. *See* 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(2). While we review *de novo* the district court's interpretation of the Sentencing Guidelines, the district court's application of the correct legal standard to Mr. Alexander and its specific conclusion he is not eligible for relief under § 3553(f) is ordinarily reviewed for clear error. *Acosta-Olivas*, 71 F.3d at 377-78 & n.3. Mr. Alexander carries the burden of providing by a preponderance of the evidence the applicability of §

5C1.2 in determining his sentence.  *United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996.)

Because we already concluded the district court did not err in determining Mr. Alexander possessed the gun in connection with the offense for which he was charged, we similarly determine, for the same reasons, the district court did not err in not applying § 5C1.2.  Moreover, Mr. Alexander failed to meet his burden of showing the applicability of applying § 5C1.2 in determining his sentence.

For these reasons, Mr. Alexander's conviction and sentence are **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge