[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 24, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-16372
Non-Argument Calendar
_____

D. C. Docket No. 06-20207-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHANNON DAWSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 24, 2008)

Before BIRCH, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Shannon Dawson appeals his convictions and sentences for possession with intent to distribute crack cocaine, powder cocaine, and marijuana, in violation of 21 U.S.C. § 841(a)(1), possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Dawson raises two issues on appeal. First, he asserts the district court erred by denying his motion for a new trial under Federal Rule of Criminal Procedure 33(b) based on the newly discovered testimony of a witness who did not appear at trial. Second, he contends that, based on the district court's expressed disagreement with the Sentencing Guidelines 100:1 crack/powder cocaine ratio, the court gave undue weight to the Guidelines when imposing his 420-month sentence, at the bottom of the applicable Guidelines range. We affirm Dawson's convictions, but vacate and remand for resentencing based on the Supreme Court's recent decision in *Kimbrough v. United States*, __ U.S. __, 128 S. Ct. 558 (2007).

## I. BACKGROUND

A. *Trial*

Officer Jose Garcia testified that on July 30, 2005, he and another officer were conducting surveillance and observed two individuals dealing what Garcia believed to be drugs. Once Garcia established a pattern consistent with drug sales,

he contacted other officers off-site and gave them the identifying information of the buyers so they could be arrested. Garcia then decided to have the other officers arrest the two sellers. Garcia, along with Officers Kevin Thelwell and Ava Heiden, all testified that, upon observing the arrest of one of the sellers, they observed the other individual, later identified as Shannon Dawson, flee. All three officers testified that Thelwell and two other officers pursued a fleeing Dawson. Thelwell testified he pursued Dawson into a nearby apartment into the apartment, and Thelwell testified that he observed Dawson place a bag in the ceiling of the bedroom closet. According to Thelwell, the officers arrested Dawson and retrieved the bag, which contained marijuana, crack cocaine, a scale with cocaine residue, a beaker, an unloaded revolver, and money.

In his defense, Dawson called Officer Marcus Carey, who also testified that Dawson fled into an apartment upon the officers' arrival at the scene, and that Carey retrieved the bag from the ceiling containing the narcotics and firearm. Dawson then called James Goosby, the landlord of the apartment building where Dawson was arrested, who testified as follows. Two tenants, one older and one younger, both with the last name Turner, were living in that particular apartment on July 30, 2005, although there was no writing or rental agreement confirming this. Goosby believed they worked in the landscape business. Goosby received a

3

call that day from a social guest of one of his tenants living in an adjacent building, whose name he could not remember, and this individual told him that officers were breaking into one of Goosby's apartment units. Goosby arrived at the scene after the police had Dawson in custody, but was not present when the arrest was made. Goosby believed the officers broke one of the windows in the apartment that day, but the court instructed the jury to disregard this statement because Goosby did not see the officers do this.

Next, Dawson called Jalazes Turner as a witness. Turner testified that at the time of Dawson's arrest, Turner was living with his Uncle Mike in the apartment where Dawson was arrested, his landlord was Goosby, and he worked with Dawson at Moe's Lawn Service. He was in the apartment with Dawson at the time of Dawson's arrest. Dawson came over to Turner's apartment to tell him they would not be working the next day, and Dawson had never been to Turner's apartment before that date. He and Dawson had been watching videos for 10 or 15 minutes, when the police broke the window, unlocked the door, entered the apartment with their guns drawn, and placed Turner in handcuffs on the floor. Turner told the officers that the bag with the narcotics and firearm belonged to his uncle who was not at home, he did not know what was in the bag at the time, and he had no reason to lie about that because it would only get his uncle into trouble.

4

He stated the officer then "huddled up" to figure out what to do with Turner and then they left. At the time of his testimony, Turner had not seen his uncle since the day before Dawson's arrest. The police had broken into Turner's apartment five days earlier because they thought he was trespassing, drew their guns, searched the entire apartment, took him to the police station, and then let him go the next day after confirming with Goosby that Turner was the tenant. Turner speculated that he now thought the officers must have seen the bag in the closet at that time.

The jury reached a guilty verdict on all five counts.[1] Dawson moved for a new trial under Federal Rule of Criminal Procedure 33 based on the newly discovered witness testimony of Keith Simmons. In this motion, defense counsel stated that she had interviewed Goosby in June 2006, that Goosby informed her that a neighborhood resident had called him the day of Dawson's arrest and told him the police were breaking into the apartment in question, but that Goosby could not remember the name of the caller. After this interview, defense counsel unsuccessfully attempted to locate that unidentified witness on three separate occasions. Four weeks after the jury reached a guilty verdict, Goosby contacted

---

[1] Dawson was convicted of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a) (Count One); possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a) (Count Two); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Three); possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five).

defense counsel and told her that he had located the caller and that it was Simmons. Defense counsel then interviewed Simmons, who told her that he was a "neighboring tenant," and saw the police force their way into Turner's apartment by breaking the front window, that the police did not chase Turner into the apartment, and that Turner and Dawson were already inside the apartment when the police broke into it. Defense counsel argued that, despite diligently making several canvasses of the neighborhood, she was unable to identify or locate Simmons before trial. Furthermore, she argued that Simmons' testimony was not cumulative, but rather would corroborate Turner's testimony and refute the police officers' testimony that they observed Dawson dealing drugs and chased Dawson into Turner's apartment with the bag in his hand. Defense counsel asserted Simmons' testimony would probably result in a not-guilty verdict.

The district court denied Dawson's motion for a new trial. The court found that Dawson did not show he exercised due care in discovering the identity of Simmons and that Simmons' testimony would be cumulative to the testimony of Turner. The court also found that Dawson did not explain how Simmons' testimony would lead to a different verdict given that Simmons' testimony would be substantially similar to that provided by Turner and Goosby.

6

B. *Sentencing*

Calculating Dawson's base offense level, the probation officer found Dawson was responsible for 33.4 grams of powder cocaine, 11.3 grams of crack cocaine, and 77.7 grams of marijuana. Pursuant to U.S.S.G. § 2D1.1, comment. (n.6),[2] these quantities were converted into their marijuana equivalent and added together. Under the Drug Equivalency Tables in U.S.S.G. § 2D1.1, the probation officer found that 1 gram of powder cocaine equaled 200 grams of marijuana and 1 gram of crack cocaine equaled 20 kilograms of marijuana. Adding the drug quantities together, the probation officer found Dawson was responsible for 310.38 kilograms of marijuana, producing a base offense level of 26 pursuant to U.S.S.G. § 2D1.1(a)(3), (c)(7). The probation officer applied an enhancement because Dawson was an armed career criminal under U.S.S.G. § 4B1.4(a) and he was also a career offender under U.S.S.G. § 4B1.1(a). Pursuant to U.S.S.G. § 4B1.1(b)(A), this career offender status gave Dawson a base offense level of 37. Although Dawson received an automatic criminal history category of VI pursuant to U.S.S.G. § 4B1.1(b) and 4B1.4(c), Dawson also had a criminal history category of VI based on several prior convictions earning him 14 criminal history points. A base offense level of 37 and a criminal history category VI produced a Guidelines

---

[2] Dawson was sentenced under the November 1, 2005, Guidelines manual, and all Sentencing Guidelines citations are to the 2005 manual.

7

range of 360 months' to life imprisonment. This sentence would run consecutively to Dawson's mandatory five-year sentence for Count Four, pursuant to 18 U.S.C. § 924(c)(1)(A). Thus, Dawson's final advisory Guidelines range was 420 months' to life imprisonment.

At sentencing, Dawson made several objections, including an objection to the 100:1 crack/cocaine ratio in the Guidelines, but the district court overruled all the objections. With respect to the crack/cocaine disparity objection, the court stated: "I agree with you, Mr. Dawson, that–but I believe you and I are in the minority. . . . I am hoping some day that the law will change and that the crack and powder will have greater parity, but at present that is not what the law is." When imposing Dawson's sentence, the court stated: "A sentence at the low end of the Guideline range is *more* than sufficient to punish and deter the defendant from future criminal activity." (Emphasis added). The district court sentenced Dawson to 360 months' imprisonment for Counts 1, 2, 3, and 5, to run concurrently, and 60 months' imprisonment for Count 4 to run consecutively–or 420 months' total imprisonment.

8

## II. DISCUSSION

A. *Motion for a New Trial*

We review the denial of a motion for a new trial for abuse of discretion. *United States v. Thompson*, 422 F.3d 1285, 1294-95 (11th Cir. 2005). A defendant may move the district court for a new trial based on newly discovered evidence. Fed. R. Crim. P. 33(b)(1). A new trial based on newly discovered evidence "is warranted only if: (1) the evidence was discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a different result." *Thompson*, 422 F.3d at 1294 (quotations omitted). "The failure to satisfy any one of these elements is fatal to a motion for new trial." *United States v. Lee*, 68 F.3d 1267, 1274 (11th Cir. 1995). "'Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution. Indeed, the defendant bears the burden of justifying a new trial.'" *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc) (quoting *United States v. Devila*, 216 F.3d 1009, 1015-16 (11th Cir. 2000)).

We have affirmed the district court's denial of a motion for a new trial on the ground the newly discovered evidence would probably not produce a different

9

result at a new trial. In *Lee*, we held that new testimony would probably not produce a different result where the testimony was cumulative and the government was likely to impeach the new testimony. 68 F.3d at 1274. In *Thompson*, we held the new testimony would probably not produce a different result where it would not impeach the testimony of a witness who underwent extensive cross-examination and where the new testimony was implausible. 422 F.3d at 1295.

The district court did not abuse its discretion in finding that Simmons' proposed testimony would probably not result in a different verdict at a new trial. *See Lee*, 68 F.3d at 1274 (stating failure to satisfy only one of the elements for warranting a new trial is fatal to a motion for new trial). Simmons' proposed testimony was that (1) he was a neighboring tenant of the apartment where Dawson was arrested, (2) he saw the police force their way in by breaking a window, and (3) the police did not chase Dawson into the apartment because he was already inside. Dawson argues that if the jury fully credited this testimony it would contradict the testimony of the police officers who stated they pursued a fleeing Dawson into the apartment after observing him selling drugs. The Government, however, would likely be able to impeach all three elements of Simmons' proposed testimony. *See id.* Simmons' statement that he was a "neighboring tenant" is contradicted by Goosby's testimony that Simmons was a social guest of a tenant.

The Government could cross-examine Simmons as to his location and vantage point at the time he observed the incident, whether it was possible that he failed to see Dawson dealing drugs or fleeing, and the coincidence surrounding the fact he must have been observing Turner's apartment before the time the police broke into it. It is also unclear how Simmons could know that Turner and Dawson were already inside the apartment. The Government could also re-call Goosby and ask him how he suddenly came upon Simmons' identity four weeks after the trial. Furthermore, Simmons' proposed testimony does not corroborate many of the less credible elements of Turner's testimony, most notably, that the police had broken into his apartment a few days earlier for no reason, and that the bag was already in the apartment and belonged to his uncle, who mysteriously disappeared. Based on these multiple potential grounds for impeachment, it is unlikely the jury would discredit the generally consistent testimony of several police officers, and conclude–as they would have to in order to find Dawson not guilty–that the officers were involved in an elaborate conspiracy to frame Dawson. Thus, the district court did not abuse its discretion by denying Dawson's motion for a new trial because Simmons' testimony would probably not produce a different outcome at a new trial. We affirm Dawson's convictions.

B.	*Crack/Cocaine Disparity*

Recently, in *Kimbrough v. United States*, the Supreme Court held "the cocaine Guidelines, like all other Guidelines, are advisory only," and that "[t]he judge may determine . . . in [a] particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing. In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." __ U.S. __, 128 S. Ct. 558, 564 (2007). In *Kimbrough*, the district court varied below the advisory Guidelines sentence based on its finding that the Guidelines provided a sentence greater than necessary to accomplish the sentencing goals advanced in 18 U.S.C. § 3553(a). The Supreme Court held the district court "appropriately framed its final determination in line with § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." *Id.* at __, 128 S. Ct. at 575.

The Supreme Court's decision abrogated our holding in *United States v. Williams*, that a court could not take into account the disparity between the Guidelines' treatment of crack and powder cocaine offenses when imposing a defendant's sentence. 456 F.3d 1353, 1366 (11th Cir. 2006). The district court was bound by our holding in *Williams* at the time it imposed Dawson's sentence.

12

With respect to the crack/cocaine disparity objection, the court stated: "I agree with you, Mr. Dawson, that–but I believe you and I are in the minority. . . . I am hoping some day that the law will change and that the crack and powder will have greater parity, but at present that is not what the law is." When imposing Dawson's sentence, the court stated: "A sentence at the low end of the Guideline range is *more* than sufficient to punish and deter the defendant from future criminal activity." (Emphasis added). The district court was not subtle regarding its disagreement with the crack/cocaine ratio. Additionally, the district court stated that Dawson's bottom-of-Guidelines range sentence was *more* than sufficient to punish and deter the defendant from future criminal activity. Based on the holding in *Kimbrough* that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes," we vacate Dawson's sentence and remand for resentencing.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**