IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-10592

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ORLANDO HOWARD, also known as, Gator

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:06-CR-86-2

Before JONES, Chief Judge, and WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Orlando Howard was found guilty by a jury of conspiracy and drug charges. The district court imposed a sentence of 180 months followed by four years of supervised release. He appeals his sentence only. For the reasons stated below, we vacate his sentence and remand for resentencing.

I. FACTS AND PROCEEDINGS

Starting in early 2005, the Department of Justice began a nationwide effort to reduce crime by targeting street gangs who were responsible for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

substantial amounts of crime in neighborhoods throughout the nation. As part of that effort, the Federal Bureau of Investigation ("FBI") and the Fort Worth Police Department formed a joint task force known as the Safe Streets Gang Unit. This unit began investigating individuals associated with the Crips street gang in an area south of Fort Worth, known as the "Fish Bowl." As early as March 2005, undercover officers and confidential informants started purchasing cocaine base or "crack" in that targeted area.

Howard and DeAngelo Bell sold crack and powder cocaine to undercover officers of this task force. Between June 30 and July 13, 2005, Howard sold 33.47 grams of crack and 5.92 grams of powder to undercover officers from his residence at 1113 East Davis Drive in Fort Worth. Bell had arranged some of these sales. Based upon these transactions, a grand jury in the Northern District of Texas indicted Howard and Bell on drug charges on May 10, 2006, and FBI agents arrested Howard at his residence on May 17, 2006. At the time of his arrest, Howard consented to a search of his residence. During this search, FBI agents found a handgun and shotgun between the mattress and box spring of Howard's bed, a semi-automatic rifle in Howard's bedroom closet, and crack and heroin in the pocket of a shirt that was also in his closet. Laboratory analysis indicated that the seized substances were 66.53 grams of crack and 7.16 grams of heroin. Bell was also arrested around this time.[1]

---

[1] Following their arrests, a grand jury returned a five-count superseding indictment against Howard and Bell on July 6, 2006. This superseding indictment charged Howard and Bell with conspiracy to possess and distribute more than five grams of crack, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846, and two counts of distribution of more than five grams of crack and aiding and abetting in that distribution, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2. It also charged Howard with possession with intent to distribute more than fifty grams of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and unlawful possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Howard pleaded not guilty to each count, but Bell pleaded guilty to Counts One, Two, and Three on July 19, 2006. He was sentenced to 235 months of imprisonment followed by three years of supervised release on October 30, 2006.

On November 16, 2006, a grand jury returned a five-count second superseding indictment against Howard. For his drug sales to undercover officers, Howard was charged with conspiracy to possess and distribute more than five grams of crack, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846 (Count One); distribution of more than five grams of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count Two); and distribution of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Three). For the contraband found in his bedroom, Howard was charged with possession with intent to distribute more than fifty grams of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count Four); and unlawful possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Five). Howard's jury trial began on January 22, 2007. The jury found Howard guilty of Counts One, Two, and Three and not guilty of Counts Four and Five on January 26, 2007.

To calculate the drug quantity for which Howard was responsible in the PSR, the probation officer converted all of the aforementioned drug quantities attributable to Howard into marijuana equivalents under U.S.S.G. § 2D1.1. This calculation resulted in Howard being held responsible for the equivalent of 2008.34 kilograms of marijuana. Based on that quantity, Howard was assigned a base offense level of 32. The probation officer applied a two-level enhancement for Howard's possession of a dangerous weapon in connection with a drug transaction under § 2D1.1(b)(1), increasing his offense level to 34. The combination of a total offense level of 34 and a category II criminal history resulted in a Guidelines range of 168 to 210 months of imprisonment.

Howard objected to the PSR, arguing that, because he was acquitted of Counts Four and Five, it was error for the probation officer to (1) hold him accountable for the drugs discovered in his bedroom when he was arrested on May 17, 2006 and (2) apply the two-level dangerous weapon enhancement. Prior

to sentencing, Howard also filed a motion for a downward departure, arguing that the calculation of his Guidelines range should not include conduct related to the two offenses for which he was acquitted and requesting that the district court give consideration to the crack/powder disparity in the Guidelines and to the United States Sentencing Commission's April 18, 2007 decision to amend the relevant crack Guideline to address that disparity, which would become effective on November 1, 2007. The amendment in question is Amendment 706, and it reduced the base offense level for most crack offenses by two levels.[2] The Sentencing Commission designated that amendment as retroactive on December 11, 2007, effective March 3, 2008.

At his sentencing hearing on May 14, 2007, Howard urged an objection that he should not have received the dangerous-weapon enhancement because there was insufficient evidence to connect him and the drugs to the firearms found during the search of his residence. To demonstrate the propriety of the enhancement, the government called FBI Special Agent Jennifer Coffindaffer, the case agent in this investigation, as a witness, who testified to facts concerning the search of Howard's residence. In rebuttal, Howard called his sister, Vicky Carter, as a witness, who testified that the bedroom where the contraband was found was Howard's bedroom and that she never saw Howard wear the shirt in which the drugs were found. Howard also reasserted his downward departure argument, asking the district court to consider the crack/powder disparity and forthcoming amendment to the Guidelines. The district court, however, overruled Howard's objections to the PSR and denied his motion for a downward departure, refusing to consider the disparity and the amendment. In so ruling, the district court found that it was not required to consider the amendment under the Guidelines because it was not yet in effect

---

[2] This amendment was further amended in the technical and conforming amendments set forth in Amendment 711, also effective November 1, 2007.

and remained a mere recommendation to Congress. The district court was silent as to the disparity and the amendment's effect on its analysis of the sentencing factors under 18 U.S.C. § 3553(a). The district court summarily concluded that it had taken the § 3553(a) factors into account and sentenced Howard to 180 months of imprisonment on Counts One, Two, and Three, with each to run concurrently. The district court also ordered Howard to serve four-year terms of supervised release on Counts One and Two and a three-year term of supervised release on Count Three, with each to run concurrently. Howard appeals.

## II. STANDARD OF REVIEW

This court reviews

> a sentencing decision for reasonableness, and as the Supreme Court has clarified, the explanation of reasonableness review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions. This standard applies regardless of whether the sentence imposed is inside or outside the Guidelines range.

United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008) (internal quotations and footnotes omitted). This court has noted that, in Gall v. United States, 128 S. Ct. 586 (2007), the Supreme Court bifurcated the process for reviewing a sentence: (1) Appellate courts "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence"; and (2) if "the sentence is procedurally sound, the appellate court [must] then consider[] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. (citing Gall, 128 S. Ct. at 597) (internal quotations omitted). "Neither Gall, Rita v. United States, nor Kimbrough v.

United States purport to alter our review of the district court's construction of the Guidelines or findings of fact." Id. (footnotes omitted). Therefore, a district court's interpretation or application of the Guidelines continues to be reviewed de novo, and its factual findings continue to be reviewed for clear error. Id. "There is no clear error if the district court's finding is plausible in light of the record as a whole." Id. (internal quotations omitted).

## III. DISCUSSION

Howard appeals his sentence, arguing that the district court erred by (1) imposing an unreasonable sentence due to its refusal to consider the crack/powder disparity, (2) applying the two-level dangerous weapon enhancement under § 2D1.1(b)(1), and (3) considering underlying charges of which he had been acquitted as relevant conduct for sentencing purposes. We address each argument in turn.

## A.

Howard first argues that his sentence is unreasonable, asserting that the district court's refusal to consider the crack/powder disparity resulted in a sentence that failed to promote respect for the law and created unwarranted sentencing disparities between similarly-situated defendants, which violated 18 U.S.C. § 3553(a)(2)(A) and (a)(6). In support, Howard states that "[s]entences will arbitrarily vary based merely on the date on which the defendant is sentenced and not on a substantive difference between defendants. Put another way, for many defendants['] sentencing will be more about lucky timing than anything." Howard notes that if the district court had considered the disparity and applied the amendment, then his total offense level would be 32 instead of 34. With his category II criminal history, Howard's Guidelines range would have been 136 to 168 months of imprisonment rather than the 168 to 210 months of imprisonment used by the district court. The government, on the other hand, argues that the district court imposed a reasonable sentence under the 2006

Guidelines, which were in effect on the date of Howard's sentencing. The government asserts that the Guidelines contained no provision that authorizes a district court to consider a future Guideline, and thus the district court did not commit error.

Since Howard's sentencing and filing of his appeal, however, the Supreme Court issued Kimbrough v. United States, 128 S. Ct. 558 (2007), and this court decided United States v. Burns, No. 07-50321, 2008 WL 1914332 (5th Cir. May 2, 2008), both of which impact Howard's appeal. In Kimbrough, the Court held that district courts are free to consider, as part of their analysis of the § 3553(a) factors, the crack/powder disparity in the Guidelines. 128 S. Ct. at 575. The Court stated that the Guidelines for crack offenses are advisory only, and therefore "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." Id. Following Kimbrough, numerous circuit courts, including the Fifth Circuit, have considered its impact in sentencings for crack offenses.

This court recently decided Burns, 2008 WL 1914332. Burns was convicted by a jury of one count of conspiracy to possess with intent to distribute crack and two counts of aiding and abetting the distribution of crack. Id. at *1. The Guidelines for crack in effect at the time of sentencing placed Burns's sentencing range at 360 months to life imprisonment. Id. Burns filed a motion for a downward departure based on the crack/powder disparity. Id. at *6. At sentencing, Burns "reiterated his desire to have the district court exercise some discretion in determining what kind of sentence he deserved based on, among other things, the disparity in the sentences between crack and powder cocaine." Id. (internal quotations omitted). Burns noted that if the district court utilized the Guidelines applicable to powder cocaine instead of crack, his sentencing

range would have been only 140 to 175 months of imprisonment. Id. The district court denied Burns's motion and stated:

> I recognize what you claim, which is claimed not only by you but by others . . . of the disparity between crack cocaine and cocaine sentencing. And that argument has been-discussion and debate has been going on in circuit courts and in the Congress and among the Sentencing Commission, but the guidelines are what the guidelines are today . . . . The Court finds that the facts do not warrant a downward departure . . . for taking into consideration the difference between crack cocaine crimes under the guidelines and cocaine offenses under the guidelines as a decision that's been made by the Congress of the United States and the Sentencing Commission.
>
> The Court finds it has no-limited discretion, if any. And if I do have discretion, I exercise my discretion not to downward depart on that basis.

Id. After denying this motion, the district court sentenced Burns to 360 months of imprisonment. Id.

The Burns court noted that following the district court's sentencing of Burns and his appeal of that sentence, the Supreme Court issued Kimbrough and the Sentencing Commission decided to amend the Guidelines to address the crack/powder disparity. Id. at *7. The court then considered how these two developments affected the validity of Burns's sentence. See id. at *7–8. The district court's aforementioned statements were construed as a finding that Burns was "not entitled to a downward departure under the Sentencing Guidelines." Id. at *7. As such, this court could not "tell from the record whether, if the judge had known that he could consider policy disagreement as an additional factor in the 'array of factors warranting consideration' in his analysis under 18 U.S.C. § 3553(a), it would have affected the ultimate sentence imposed on Burns." Id. It noted that "[t]he new approach to sentencing brought by these developments is that a district judge should consider the applicable Sentencing Guidelines range and the policy behind the Guidelines, but the judge

may deviate from either or both. The judge should tailor any deviations by using the Section 3553(a) factors as a pattern." Id. This court then vacated Burns's sentence, holding that he was entitled to have his sentence set by a judge aware of the discretion that Kimbrough has announced, and remanded so that the district court could analyze the § 3553(a) factors in light of Kimbrough. Id. at *8. It provided, however, that on remand, the district court could, on its own initiative, consider the applicability of the change in the Guidelines to the defendant's sentence under 18 U.S.C. § 3582(c)(2), which allows for the district court to reduce a defendant's sentence based upon a retroactive amendment to a Guideline provision at issue.[3] Id.

Our sister circuits have also considered the impact of Kimbrough in similar cases. The Seventh Circuit in United States v. Padilla, No. 06-4370, 2008 WL 833994 (7th Cir. Mar. 31, 2008), vacated a defendant's sentence and remanded for resentencing in light of Kimbrough. Id. at *7. The court stated that the district court made no comments about whether it thought it could consider the crack/powder disparity in rendering a sentence and that on the

---

[3] This section governs when an already-sentenced defendant is eligible for consideration for a sentence reduction because of a lowered Guideline. It provides that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). Based upon the last sentence of this section, retroactive application of an amendment depends upon the policy statements issued by the Sentencing Commission, which are located in U.S.S.G. § 1B1.10. Section 1B1.10(c) lists a number of amendments which the Sentencing Commission has selected to be applied retroactively under 18 U.S.C. § 3582(c)(2). Here, on December 11, 2007, the Sentencing Commission decided that its amendment would be retroactive, effective March 3, 2008. This amendment has been expressly listed in U.S.S.G. § 1B1.10(c). Therefore, Howard is eligible for a discretionary sentence reduction under 18 U.S.C. § 3582(c)(2).

record, it "ha[d] no way of knowing if the district court would have imposed the same above-guidelines sentence had the court known that [it] had discretion to consider that disparity when deciding upon a sentence under § 3553(a)." Id. As a result, the court held that "[b]ecause we cannot ascertain with any exacting degree of certainty whether the sentencing judge would have imposed the same term of incarceration in the wake of Kimbrough, . . . a remand is appropriate." Id. Likewise, the Eighth Circuit in United States v. Roberson, 517 F.3d 990 (8th Cir. 2008), vacated a defendant's sentence and remanded for resentencing in light of Kimbrough. Id. at 995. The court noted that "the district court said nothing in either [defendants'] sentencing hearing about the disparity," and that it was "unclear whether the district court declined to use its discretion in the requested manner because of then-current Eighth Circuit precedent or because it did not find that the disparity warranted any variance from the guidelines." Id. In addition, the Ninth and Eleventh Circuits have vacated defendants' sentences and remanded for resentencings in light of Kimbrough where the district court stated that it did not have authority to consider the disparity as part of its consideration of § 3553(a) factors. See United States v. Dawson, No. 06-16372, 2008 WL 194914, at *5 (11th Cir. Jan. 24, 2008); United States v. Medina Casteneda, 511 F.3d 1246, 1248–49 (9th Cir. 2008).

Because of these developments, Howard's appeal turns on the district court's statements in its ruling denying Howard's motion for a downward departure based upon the disparity and the amendment. First, the district court was silent as to the effect of the crack/powder disparity on Howard's sentence. Second, as to the amendment addressing that disparity, the district court provided that it "saw nothing in [the amendment] that indicated that there was any effect of law" as of the date of Howard's sentencing hearing and that "[i]t's clear to me that the proposal by the commission is to Congress and that the current ratios, current provisions, all remain in effect." Based upon these

statements alone, the district court denied Howard's motion for a downward departure. Thereafter, the district court summarily stated that it had considered all of the factors under § 3553(a), without any discussion of the disparity or amendment's effect in that analysis, and sentenced Howard to 180 months of imprisonment.

Given the district court's ruling, we hold that Burns controls this appeal and we thereby vacate Howard's sentence and remand for resentencing in light of Kimbrough and Burns. As in Burns, the district court ruled that Howard was not entitled to a downward departure under the Guidelines based upon the amendment. The government's argument reinforces this understanding of the district court's ruling, as it argues that the district court was not required to consider the future amendment to the Guidelines and was thus correct in sentencing Howard under the 2006 Guidelines, which were in effect at the time of his sentencing. Faced with the district court's ruling based completely on the Guidelines, it cannot be determined whether the district court knew that it could consider the disparity or the amendment as part of its § 3553(a) analysis when sentencing Howard. The district court never indicated that it knew it could consider the disparity or amendment in its analysis of the § 3553(a) factors, and it never discussed them in pronouncing his sentence. Therefore, we do not know whether, if the district court had known that he could consider policy disagreement or amendment, as an additional factor in its analysis of § 3553(a), it would have affected the ultimate sentence imposed on Howard. Accordingly, we vacate Howard's sentence and remand for resentencing.

Additionally, like we provided for in Burns, "[t]he district court may combine the resentencing proceeding on remand with any additional proceedings the district court may determine are appropriate in light of amendments to the Sentencing Guidelines related to crack-cocaine, which became effective March 3, 2008." 2008 WL 1914332, at *8. The district court, even without a motion from

11

Howard, may on its own initiative (or at the request of the director of the federal bureau of prisons) consider the applicability of the amendment to Howard's sentence under 18 U.S.C. § 3582. See id.

B.

Howard also argues that the district court erred when it applied the two-level enhancement for possession of a dangerous weapon in connection with a drug transaction under § 2D1.1(b)(1). Section 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during certain drug offenses. The government must demonstrate by a preponderance of the evidence that "the defendant personally possessed the weapon by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." United States v. Hooten, 942 F.2d 878, 882 (5th Cir. 1991). To satisfy this burden, "the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." Id. "It is not necessary for possession of the weapon to play an integral role in the offense or to be sufficiently connected with the crime to warrant prosecution as an independent firearm offense." United States v. Villarreal, 920 F.2d 1218, 1221 (5th Cir. 1991); United States v. Rodriguez, 62 F.3d 723, 724–25 (5th Cir. 1995) (stating that the weapon need not be brandished or loaded). "Application Note 3 to § 2D1.1 explains that the enhancement for possession of a weapon should be applied if the weapon was present [at the time of the transaction], unless it is clearly improbable that the weapon was connected with the offense." United States v. Mitchell, 31 F.3d 271, 277 (5th Cir. 1994) (internal quotations omitted). The dispositive factor is whether the weapon was accessible to protect the drugs, the cash, or the participants themselves during the commission of the illegal activity. Rodriguez, 62 F.3d at 724–25. "The district court's decision to apply § 2D1.1(b)(1) is

essentially a factual determination reviewable under the clearly erroneous standard." Id. at 724.

In his attempt to show that the district court erred in applying the dangerous weapon enhancement, Howard argues that (1) he did not possess a gun during the commission of the offense for which he was actually convicted, and (2) the government failed to show that a temporal and spatial relation existed between the weapons found, drug trafficking activity, and himself. Notably, as to his second argument, Howard cites no supporting case law involving similar factual scenarios. Howard emphasizes only that "surveillance during the investigation never saw him with a firearm," and drugs were not found with the handgun and shotgun discovered between the mattress and box spring of his bed.

Howard's first argument is without merit. He essentially argues that the enhancement cannot be applied with respect to the firearms discovered in his bedroom because the jury acquitted him of the charge related to that conduct. The fact that he was acquitted of possessing a firearm in furtherance of a drug trafficking offense (Count Four), however, does not bar the district court from applying this enhancement. See United States v. Partida, 385 F.3d 546, 565 (5th Cir. 2004); see also United States v. Hernandez, 457 F.3d 416, 423 (5th Cir. 2006) (stating that "[t]he showing required for a section 2D1.1 sentencing enhancement is lower than that required for a conviction under section 924(c)"). Furthermore, "it does not matter whether [Howard] actually used or intended to use the guns in his drug-trafficking offense; the pertinent fact is that they could have been so used." United States v. Jacquinot, 258 F.3d 423, 431 (5th Cir. 2001) (internal quotations omitted). Thus, Howard's first argument fails.

Howard's second argument also falls short of demonstrating district court error. He argues that the government failed to show a temporal and spatial relation between the weapons, drug activity, and himself. However, based upon

Howard's numerous admissions and the evidence presented at the hearing, the district court's finding is plausible, and there is sufficient evidence that it was not clearly improbable that the firearms were connected to drug activity. Howard admits that "[a] handgun and shotgun were found between the mattress and box spring in the bedroom occupied by" him and that a rifle and drugs were found in the closet of his bedroom. Even though Howard attempts to argue that "little evidence" connects him to that bedroom, he admits that it was his bedroom, that "[h]e appeared from this bedroom when officers entered the house," and that "his Texas ID was found in the bedroom." Furthermore, Special Agent Coffindaffer provided further evidence to establish the requisite nexus for the enhancement. Specifically, Coffindaffer testified that, based upon the investigation, which was supported by information from undercover officers, and informants, and later from co-conspirators, (1) she believed Howard to be a member of the Hoova Crips street gang, (2) agents recovered photographs from Howard's bedroom that showed him "flashing" Crips gang signs, (3) Howard's residence was a known crack distribution location, (4) the words "King O" written above the headboard of the bed in Howard's bedroom was meant to reference Orlando Howard, and (5) crack, heroin, and firearms were discovered in Howard's bedroom and closet, in the home where numerous drug transactions occurred. This evidence is sufficient to support the application of the enhancement, especially considering that Howard's only witness in rebuttal—his sister, Vicky Carter—confirmed that the closet where the crack and rifle were found was Howard's.

Case law supports the district court's application of this enhancement. This court considered similar facts in United States v. Juluke, 426 F.3d 323 (5th Cir. 2005) (per curiam), and upheld the dangerous weapon enhancement. Id. at 328. In that case, the "loaded weapons at issue were found in the same home as the cash [i.e., drug proceeds], and one was found in the same closet as a portion

14

of the cash. The weapons were also on the same property that the district court found [the defendant] had used to store heroin." Id. Based on these facts, we held that the district court properly applied the enhancement. Id. Moreover, as the government notes, the temporal and spatial relation in Howard's case was closer than that approved in United States v. Farias, 469 F.3d 393 (5th Cir. 2006). In Farias, "the gun was found underneath the seat where [the defendant] had been sitting [in a vehicle], near methamphetamine in the trunk, on the way to what one of [the defendant's] passengers later testified was a drug debt collection . . . ." Id. at 400. The defendant "offered no evidence to rebut the resulting inference," and we determined that the district court did not err in applying the enhancement. Id. Moreover, the Seventh Circuit in United States v. Noble, 246 F.3d 946 (7th Cir. 2001), upheld the enhancement in a similar case. Id. at 954. There, drug proceeds were found in the defendant's bedroom, and a weapon and ammunition were found in the bedroom closet. Id. The court held that the "proximity of a weapon to drug proceeds provide[d] a sufficient nexus to conclude that it was not clearly improbable that the gun was connected with the offense." Id. (internal quotations omitted). Like these cases, we hold that the district court did not err in applying the enhancement to Howard.

C.

Howard lastly argues that the district court erred in considering underlying charges of which he had been acquitted as relevant conduct for sentencing purposes. He specifically asserts that the district court erred in calculating his base offense level based on his possession of drugs and firearms in his bedroom and closet, which were the subject of the charges of which the jury acquitted him. Howard, however, concedes that this argument is foreclosed by the Supreme Court's holding in United States v. Watts, 519 U.S. 148, 156–57 (1997) (per curiam). Moreover, "[a] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge,

so long as that conduct has been proved by a preponderance of the evidence." United States v. Valdez, 453 F.3d 252, 264 (5th Cir. 2006) (citing Watts, 519 U.S. at 157) (internal quotations omitted). Although the Valdez court did not specifically state whether Watts remains valid after United States v. Booker, 543 U.S. 220 (2005), this court has since held that it does. See Farias, 469 F.3d at 399; United States v. Jones, 194 F. App'x 196, 198 (5th Cir. 2006) (per curiam) (unpublished). Accordingly, Howard's argument is without merit, and we hold that the district court did not err.

## IV. CONCLUSION

For the foregoing reasons, we VACATE and REMAND for resentencing consistent with this opinion.