REVISED May 8, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 2, 2008

Charles R. Fulbruge III
Clerk

No. 07-50321

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

TOMMY DELANDO BURNS aka Twisted Black

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS and SOUTHWICK, Circuit Judges, and DRELL, District Judge.[*]
SOUTHWICK:

Tommy Delando Burns was convicted by a jury of one count of conspiracy to possess with intent to distribute crack cocaine and two counts of aiding and abetting the distribution of crack cocaine. He was sentenced to 360 months' imprisonment on each count and five years supervised release with all sentences to run concurrently. Burns appeals his conviction alleging (1) ineffective assistance of counsel; (2) improper remarks by the prosecutor at trial; and (3) insufficiency of the evidence to support the conviction. Burns also challenges his

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

sentence in light of Kimbrough v. United States, 128 S. Ct. 558 (2007) and the subsequent amendments to the Sentencing Guidelines regarding the disparity in sentencing of crack and powder cocaine offenses. We affirm Burns's conviction but vacate his sentence and remand for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 2, 2005, members of the Midland, Texas police department executed a search warrant at the home of Angela Hutson. During the search, they discovered cocaine in the home. In addition to the cocaine, officers also found razor blades with cocaine residue, as well as a Western Union receipt documenting a wire transfer of funds from Angela Hutson to Burns. Officers also found a poster or CD cover depicting the artist "Twisted Black."[1] After the search, Hutson became a cooperating witness for the Government and agreed to identify her cocaine suppliers. Burns was identified as a supplier. An investigation ensued, and a number of other individuals identified Burns as a cocaine supplier. Based on this evidence, Burns and a co-defendant Lashan Shelton were indicted on four counts: (1) conspiracy to possess, with intent to distribute, 50 grams or more of cocaine base or "crack"; (2) aiding and abetting the distribution of 500 grams of cocaine; (3) aiding and abetting the distribution of 5 grams or more of crack; and (4) aiding and abetting the distribution of 50 grams of crack.[2] All of these counts arose from transactions which occurred in either 2001 or 2005.

The case was tried to a jury. The Government presented thirteen witnesses describing Burns's involvement in the sale and distribution of cocaine. Eight of the Government's witnesses testified as cooperating witnesses pursuant

---

[1] Burns, whose stage name is "Twisted Black," is a successful rap artist who has released several albums. His most recent release, "Street Fame," debuted after his conviction in this case.

[2] Shelton was a fugitive at the time of trial and therefore only Burns was tried.

to plea agreements in which they were seeking reduced sentences for testifying against Burns. Burns did not testify but presented eight witnesses in his defense. The jury found Burns guilty on all counts except Count 2, which was aiding and abetting the distribution of 500 grams of cocaine. A mistrial was declared on that Count.

After the conviction, the district court held a sentencing hearing. The district court calculated Burns's sentence, holding Burns responsible for 1,022.15 grams of crack cocaine, and granting a two-level upward adjustment in sentence for obstruction of justice. After taking into account Burns's criminal history category, his Guideline range was 360 months to life on counts one and four and 360 to 480 months on count three. The court sentenced Burns to 360 months' imprisonment and 5 years of supervised release on each count, to run concurrently. Burns timely appealed the conviction and sentence.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Burns first asserts that he was denied effective assistance of counsel. One of his attorneys had previously represented a witness who testified for the Government. Burns alleges that due to the prior representation, his lawyers labored under a conflict of interest, failed adequately to cross-examine the witness, and Burns's defense was harmed as a result.

The representation to which a defendant is entitled under the Sixth Amendment of the Constitution must be free from any conflict of interest. United States v. Garcia-Jasso, 472 F.3d 239, 243 (5th Cir. 2006). As a general rule, a conflict exists when defense counsel allows a situation to arise that tempts a division in counsel's loyalties. Id. at 243. To establish a Sixth Amendment violation on the basis of a conflict of interest the defendant must demonstrate: (1) that his counsel acted under the influence of an actual conflict; and (2) that the conflict adversely affected his performance at trial. United

States v. Culverhouse, 507 F.3d 888, 892 (5th Cir. 2007). The question of whether a conflict existed and whether the conflict had an adverse effect on the representation are mixed questions of law and fact which are reviewed de novo. United States v. Infante, 404 F.3d 376, 391 (5th Cir. 2005).

An actual conflict is one that "adversely affects counsel's performance." Infante, 404 F.3d at 392. There must be an "actual" conflict and not "a speculative or potential" conflict. Id. at 391. Only if counsel had to choose between "the divergent or competing interests of a former or current client" is there an actual conflict. Garcia-Jasso, 472 F.3d at 243.

The question of whether a disqualifying conflict exists is highly fact-dependent. Id. at 392. Factors that this Court has found to be particularly relevant include (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated. Id. Furthermore, the defendant must show more than that his attorney cross-examined a former client before a hypothetical conflict will be considered an actual one. Perillo v. Johnson, 205 F.3d 775, 801-802 (5th Cir. 2000).

The conflict here remained purely hypothetical. One of Burns's attorneys represented a Government witness in an asset forfeiture administrative proceeding four years prior to this trial. The representation had been unequivocally terminated; the facts and issues of the previous representation had no relation to the charges brought against Burns. The attorney had very limited contact with the former client and in those contacts did not discuss the source of the forfeited funds. Furthermore, out of an abundance of caution, the affected attorney's co-counsel cross-examined the witness.

The burden is on Burns to show that "there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict." Infante, 404 F.3d at 393. Burns asserts that defense counsel refrained from inquiring into the forfeiture proceedings because of the conflict. The record does not support this contention. Instead, the record demonstrates that Burns's attorney challenged the witness' credibility at length in an attempt to demonstrate that the witness really did not know Burns, and was testifying to obtain favorable treatment from the Government. There is nothing to indicate that the failure to inquire about the prior forfeiture was the result of the "divided loyalties" which would result in an actual conflict as opposed to a tactical trial strategy.[3] United States v. Martinez, 151 F.3d 384, 393 (5th Cir. 1998). Because Burns has not demonstrated that counsel labored under an actual conflict of interest, we do not have to address his claim that he was entitled to a Garcia hearing to ensure that he knowingly waived the conflict. Garcia-Jasso, 472 F.3d at 244.

B.      Prosecutorial Misconduct

Burns challenges two comments made by the prosecutor during the trial. The first statement was made while a defense witness was being cross-examined, and the second was made during the Government's closing argument. Both involve the credibility of Government witness Angela Hutson.

Improper statements by a prosecutor constitutes reversible error when "the defendant's right to a fair trial is substantially affected." United States v. Andrews, 22 F.3d 1328, 1348 (5th Cir. 1994). Our review of challenged statements occurs in two steps. First we determine whether the prosecutor

---

[3] This is particularly true since it is possible that inquiry into the prior administrative forfeiture proceedings could have opened the door to the source of those funds. Since defense counsel's strategy was to portray the former client as someone who did not really know Burns but was testifying merely to obtain leniency from the Government, questioning about the forfeiture could have been extremely risky.

made an improper remark. If so, then we examine whether, in the context of the entire trial, the remark "prejudiced the defendant's substantive rights." United States v. Morganfield, 501 F.3d 453, 467 (5th Cir. 2007).

The first statement occurred in the cross-examination of defense witness Sylvia Villalba. The defense wanted her to testify as to Hutson's reputation for truthfulness. On cross-examination, the Government asked Villalba this:

> Ms. Villalba, you're aware that, specifically, Ms. Hutson testified before a jury in a very similar case for Mr. Perkins, and that jury, from the results of that verdict, found her to be truthful; is that correct?

> MR. GREENE:    I object.

> COURT:       Sustained.

The second statement occurred during closing arguments. The prosecutor was describing the testimony of various defense witnesses:

> Inecia Perkins. Inecia Perkins [is] the [sister] of the convicted drug dealer, Zet Perkins. Zet Perkins is involved in this case. Zet Perkins went to the pen because of Angela Hutson's testimony from the last trial. You heard all of that. Does Inecia Perkins sound like an unbiased person to ask her opinion to Angela Hutson? Does it sound like somebody who is mad because this lady testified in her brother's trial? (Emphasis added.)

In these comments or questions, the Government was referring to a prior trial. Both comments referred to a central prosecution witness against Burns, Angela Hutson. Hutson had testified in a prior trial against Zeteral Perkins – a friend or associate of Burns. To attack Hutson's credibility, the defense called several witnesses. One of the witnesses, Inecia Perkins, was the sister of Zeteral Perkins and Hutson's former friend. Inecia testified that Hutson lied in her testimony at Zeteral Perkin's trial to avoid prosecution. The defense counsel's strategy was to convince the jury that if Hutson would lie in the prior trial to protect herself, she would lie in this trial as well. The defense also called Sylvia

Villalba, a Pretrial Service Officer who supervised Hutson while she was on pretrial release. She testified on the issue of Hutson's reputation for truthfulness, saying that Hutson would tell the truth or lie depending on what benefitted her at the time. On cross-examination, the prosecutor asked only the question challenged by Burns.

We examine each challenged statement. The first is the Government's question to Sylvia Villalba. By noting that Hutson's testimony must have been accepted by that earlier jury, the Government sought to bolster Hutson. The district court sustained Burns's objection to the question.

The asking of an improper question is hardly sufficient to justify a reversal. Burns has the burden of demonstrating that the question rendered the trial fundamentally unfair. Not only was the objection sustained, but the district court instructed the jury to disregard questions where an objection was sustained; the court also ordered jurors not to speculate as to what the witness might have said. Jurors are presumed to follow the instructions given by the court. United States v. Skelton, 514 F.3d 433, 446 (5th Cir. 2008). Burns has not demonstrated how the prosecutor's unanswered question, which was remedied by the charge to the jury, rendered his trial fundamentally unfair.

The second trial comment was made in closing argument. Because Burns did not object, we review the challenge for plain error. Plain error exists if (1) there was error; (2) the error was clear and obvious; and (3) the error affected a substantial right. United States v. Jimenez, 256 F.3d 330, 340 (5th Cir. 2001). Plain error review is limited to those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. In analyzing this comment, it is important that Burns's own witness, Inecia Perkins, testified that Hutson had "got [her] brother 22 years." The Government was commenting on statements that the jury had already heard at trial from a defense witness. Viewing the comment of the prosecutor in the context of the entire trial and in

the light of the arguments presented by defense counsel to which it responded, the prosecutor's comments in closing argument do not constitute plain error. United States v. Thomas, 12 F.3d 1350, 1367-68 (5th Cir. 1994).

C.     Sufficiency of the Evidence

Burns presents two challenges to the sufficiency of the evidence supporting his conviction and sentence.   First, Burns argues that the evidence was insufficient to show that he knew that approximately 500 grams of cocaine he distributed in a powder form would be converted into "crack" cocaine to be sold. Second, he argues that the Government's reliance on numerous witnesses testifying pursuant to plea agreements violated Burns's right to due process.

(1) Foreseeability of conversion of powder to crack cocaine

In calculating Burns's sentence, the trial court determined that it was foreseeable that the approximately 500 grams of powder cocaine Burns sold to Andre Harris would be converted into "crack" cocaine to be sold.  This finding resulted in an increase in the amount of crack attributable to Burns for sentencing purposes by 765.45 grams.

We review the district court's findings of fact at sentencing for clear error, and its application of the Sentencing Guidelines is reviewed de novo.  United States v. Booker, 334 F.3d 406, 412 (5th Cir. 2003).  If, after reviewing the record, the district court's view of the evidence is plausible, the district court's decision must be affirmed even if the judges on this Court, sitting as the trier of fact would have weighed the evidence differently.  Id. at 421-13.  The district court was permitted to convert a quantity of powder cocaine to a comparable amount of crack cocaine for sentencing purposes if the conversion was foreseeable to the defendant.  Id. at 414.

The court considered the fact that Burns knew that Harris was a crack dealer. Furthermore, the amount of cocaine that Burns sold to Harris was much greater than used for normal consumption.   Burns also approached Harris

8

approximately two weeks after the transaction inquiring about making another transaction. This is similar to the facts in Booker, where the fact that the defendant had known the purchaser for six years and also knew he was a crack dealer was sufficient to make it reasonably foreseeable that the purchaser would convert the powder to cocaine base. Id. at 414. It was not clear error for the district judge to conclude that it was foreseeable to Burns that Harris would convert the powder cocaine he purchased into crack cocaine.

(2) Due Process Violation

Burns argues that the Government's excessive use of cooperating witnesses made the risk of improper conviction so great that his Fifth Amendment due process rights were violated. An alleged due process violation is reviewed under a de novo standard. United States v. Williams, 343 F.3d 423, 439 (5th Cir. 2003).

This Court has stated that, "[a]s long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the Government in exchange for non-prosecution or leniency, may be constitutionally sufficient to convict." United States v. Westbrook, 119 F.3d 1176, 1190 (5th Cir. 1997) (citation omitted). In Westbrook, the Court rejected the defendant's argument that the testimony was "so incredible that no rational jury could have convicted him of conspiracy" where the defendant alleged that the witnesses who testified against him were "crack addicts, had criminal records, were liars, testified inconsistently, and/or cooperated with the Government to avoid prosecution themselves." Id at 1190. Burns makes the same argument. He asserts that the only witnesses connecting Burns to illegal drugs: (1) had reason to lie; (2) knew each other (which provided an opportunity for collusion against Burns); (3) were housed together in the same detention facility which facilitated more collusion; and (4) each had an incentive to invent stories implicating Burns to obtain a reduced sentence.

This Court has held that it is up to the jury to judge the credibility of witnesses who receive favorable treatment from the Government to testify. The fact that the Government provides inducements to a number of witnesses to testify does not disqualify the witnesses or violate the defendant's due process rights. United States. v. Garcia Abrego, 141 F.3d 142, 152 (5th Cir. 1998); see also United States v. Kimble, 719 F.2d 1253, 1256 (5th Cir. 1983) (rejecting defendant's claim that testimony was per se incredible because witness was testifying pursuant to a plea bargain). Burns does not allege that his counsel was prohibited from cross-examining the witnesses on their plea bargains or attacking the witnesses on their ulterior motives for testifying against Burns. In fact, the record shows that Burns's counsel vigorously cross-examined each of the Government's witnesses.

Burns's due process rights were not violated by the fact that a number of the Government's witnesses were testifying pursuant to plea agreements.

D.     Sentence

Burns's final issue on appeal is a challenge to his sentence. Specifically, Burns argues that the district court failed to consider the disparity in the Sentencing Guidelines treatment of crack and powder cocaine offenses. At the time Burns was sentenced, the Sentencing Guidelines reflected a 100:1 ratio of crack to powder – meaning that for purposes of sentencing, one gram of crack cocaine was considered the equivalent of 100 grams of cocaine powder. Utilizing the Guidelines in effect at the time, the district court determined that the recommended sentencing range for Burns was 360 months to life on the Count of conspiracy to possess with intent to distribute 50 grams or more of crack and on the Count of aiding and abetting the distribution of 50 grams or more of crack. On the third Count, aiding and abetting the distribution of 5 grams or more of crack, the guideline range was 360 to 480 months. The court ultimately sentenced Burns to 360 months on each Count. Burns points out that if the

10

Guidelines applicable to powder cocaine had instead been used, the sentence range would have been only 140 to 175 months.

Prior to his sentencing hearing, Burns filed a motion for a downward departure based on the sentencing disparity between powder and crack cocaine.[4] At his sentencing hearing, Burns reiterated his desire to have the district court "exercise some discretion in determining what kind of sentence" he deserved based on, among other things, the disparity in the sentences between crack and powder cocaine. The district judge responded:

> I recognize what you claim, which is claimed not only by you but by others . . . of the disparity between crack cocaine and cocaine sentencing. And that argument has been -- discussion and debate has been going on in circuit courts and in the Congress and among the Sentencing Commission, but the guidelines are what the guidelines are today . . . . The Court finds that the facts do not warrant a downward departure . . . for taking into consideration the difference between crack cocaine crimes under the guidelines and cocaine offenses under the guidelines as a decision that's been made by the Congress of the United States and the Sentencing Commission.
>
> The Court finds it has no – limited discretion, if any. And if I do have discretion, I exercise my discretion not to downward depart on that basis.

After Burns was sentenced, two events occurred that he alleges requires vacating his sentence. First, the Supreme Court issued its opinion in Kimbrough v. United States, 128 S. Ct. 558 (2007). There, the Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing . . . that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes . . . ." Id. at 575. Second, amendments to the Sentencing Guidelines which took effect November 1, 2007, reduced the base offense level

---

[4] Burns sought a downward departure based on U.S.S.G. 5K2.0, and argued that the crack/powder disparity was a circumstance that was not adequately taken into consideration in calculating the Guidelines range.

for most crack cocaine offenses. United States Sentencing Guidelines Manual (2007), App. C, Amend. 706. The amendment adjusts downward by two levels the base offense level for the quantity of crack. This has the practical effect of making the sentence range for most crack cocaine offenses less divergent from the sentence range for powder cocaine offenses. In December, 2007, the United States Sentencing Commission voted to apply the amendment retroactively effective March 3, 2008. Thus, as of March 3, 2008, those defendants serving eligible cocaine-based sentences can file a motion for a sentence reduction. See 18 U.S.C. § 3582(c)(2).

These events, and particularly the Supreme Court's decision in Kimbrough, make the district judge's statements at the sentencing hearing relevant to this appeal. The statement that the Guidelines "are what the guidelines are today" could mean several things. In context, the court appears to indicate that dispute about the disparity between crack and powder sentences was a matter for Congress and the Sentencing Commission to resolve.

The district judge's statement that the court had "no – limited discretion, if any" to make a downward departure did not accurately predict the subsequent Kimbrough decision. In Kimbrough, the Court held that sentencing courts have discretion to consider a disagreement with the Sentencing Commission's policy rationale for the disparity between crack and powder cocaine.

The Government argues that other statements by the district judge – that "the facts do not warrant a downward departure" and "if I do have discretion, I exercise my discretion not to downward depart" – remedy any Kimbrough problem because the statements indicated that the judge did not believe that the facts justified a reduced sentence. We do not agree. Read in context, the district court's statement is that Burns is not entitled to a downward departure under the Sentencing Guidelines. This would mean that Burns's case was not atypcial or unusual and fell within the "heartland" of the Sentencing Guidelines. United

States v. Winters, 174 F.3d 478, 482 (5th Cir. 1999) ("a district court cannot depart from the guidelines unless it first finds . . . that facts or circumstances remove the case from the 'heartland' of typical cases encompassed within the guideline."). The Kimbrough issue has a different focus. We cannot tell from the record whether, if the judge had known that he could consider policy disagreement as an additional factor in the "array of factors warranting consideration" in his analysis under 18 U.S.C. § 3553(a), it would have affected the ultimate sentence imposed on Burns.

The new approach to sentencing brought by these developments is that a district judge should consider the applicable Sentencing Guidelines range and the policy behind the Guidelines, but the judge may deviate from either or both. The judge should tailor any deviations by using the Section 3553(a) factors as a pattern. United States v. Gomez-Herrera, No. 07-10153 2008 WL 886091, *3 (5th Cir. April 3, 2008); Kimbrough, 128 S. Ct. at 564.

We vacate this sentence because Burns, having objected on the basis of an improper disparity between the Guidelines' treatment of powder and crack cocaine offenses, is entitled to have his sentence set by a judge aware of the discretion that Kimbrough has announced. We in no manner intimate a particular sentence or even that the district court should enter a different sentence on remand. Instead, we vacate and remand in order that the district court may analyze the Section 3553(a) factors in light of Kimbrough.

The district court may combine the resentencing proceeding on remand with any additional proceedings the district court may determine are appropriate in light of amendments to the Sentencing Guidelines related to crack-cocaine, which became effective March 3, 2008. We note that even without a motion from Burns, Section 3582(c) provides that the district court is free on its own initiative (or at the request of the director of the federal bureau of prisons) to consider the applicability of the change in the Sentencing Guidelines

to Burns's sentence.  18 U.S.C. § 3582(c)(2).  See United States v. Taylor, No. 06-4123, 2008 WL 782739, *3 (7th Cir. March 26, 2008).

Accordingly, Burns's conviction is AFFIRMED, but we VACATE and REMAND for resentencing consistent with this opinion.