# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2012

No. 10-51136

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

AARON HERNANDEZ, also known as Aaron Talamantes, also known as Squirrel,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

GARZA, Circuit Judge:

Defendant-Appellant Aaron Hernandez appeals his convictions and sentence for (1) conspiracy to possess with intent to distribute cocaine and (2) aiding and abetting the theft of government money. We affirm the convictions, but we vacate his sentence and remand for further proceedings.

## I

A Federal Bureau of Investigation ("FBI") agent received information from a confidential source, Lorenzo Guerra, that Hernandez was "selling kilogram quantities of cocaine." Guerra arranged a meeting with Hernandez at the latter's residence to discuss the purchase of cocaine. At the meeting,

No. 10-51136

Hernandez showed Guerra a small amount of cocaine and indicated that he could sell him one kilogram. Hernandez told Guerra that his brother, Daniel Hernandez ("Daniel"), had the kilogram of cocaine and that he should return to talk to Daniel. Two days later, Guerra returned to Hernandez's residence and tentatively agreed to purchase one kilogram of cocaine from Hernandez for $17,000. At this meeting, Hernandez again showed Guerra a small amount of cocaine; he also showed Guerra a .45 caliber handgun that he had tucked in his waistband. Guerra finalized the $17,000 purchase price in a subsequent telephone conversation with Daniel.

A few days later, Guerra met Daniel in a parking lot of an apartment complex with $17,000 in FBI funds to complete the purchase. Daniel got in Guerra's truck and the two of them drove to another apartment complex. After they stopped, Daniel told Guerra to give him the money and he would bring the cocaine back. When Guerra balked, Daniel explained that the person holding the cocaine did not want to meet Guerra. Guerra eventually gave Daniel the money, but Daniel took the money and fled in a waiting car.

A grand jury returned a two-count indictment against Hernandez, his wife Erica Carrillo, Daniel, and another person.[1] The indictment charged all four defendants with one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a), 841(B)(ii) & 846. And it charged Hernandez, Daniel, and Carrillo with aiding and abetting the theft and conversion to their own use of $17,000 in U.S. currency belonging to the FBI, in violation of 18 U.S.C. § 641.

The indictment was unsealed on February 19, 2010 upon the arrest of Hernandez, Daniel, and Carrillo. Shortly thereafter, Attorney Sergio Gonzalez entered an appearance for Hernandez and his wife Carrillo. At a detention

---

[1] The grand jury later returned a superseding indictment that did not contain any substantive changes.

2

No. 10-51136

hearing for the Hernandez brothers that same day, Attorney Gonzalez revealed that he had represented Daniel in a felony case in state court that had been dismissed a week earlier.

The district court eventually set a hearing to review the conflict of interest stemming from Attorney Gonzalez's representation of both Hernandez and his wife. The court found that a conflict of interest existed and ordered Gonzalez to withdraw from representation of Carrillo.

Five days before trial, the Government moved to disqualify Attorney Gonzalez as counsel for Hernandez based on his representation of Daniel in the state felony matter that Gonzalez had mentioned in the detention hearing. The Government's motion stated that Daniel had pleaded guilty to both counts of the indictment and that it would probably call Daniel as a witness at Hernandez's trial. It contended that Attorney Gonzalez would have a conflict of interest if Daniel were called to testify because Gonzalez might have information from an attorney/client relationship that (1) would prevent him from representing Hernandez effectively or (2) would cause him to breach the attorney/client privilege he owed to Daniel. The Government requested a "*Garcia* hearing" to ensure a valid waiver by Hernandez of his right to representation free from any conflict of interest. *See United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & n.2 (1984). Attached to its motion, the Government submitted copies of state court documents showing that Gonzalez had represented Daniel for one day—from February 3 to February 4, 2010, when the state felony case was dismissed. The Government also indicated that Daniel had advised it that Attorney Gonzalez represented him on another occasion as well.

On the morning of the first day of trial, the district court held a hearing prior to jury selection on the Government's motion to disqualify Attorney Gonzalez. At the hearing the Government acknowledged that Daniel's prior

3

state case, which involved charges of felony marijuana possession, was not related to this case. However, the Government expressed concern that it planned to call Daniel as a witness in the instant case and that Attorney Gonzalez might not be able to effectively cross-examine him without a conflict of interest arising. Attorney Gonzalez responded that he had "never even spoke with . . . Daniel" regarding the prior case; he said that he had simply "showed up at the first hearing," "looked at the file," and "talked to the [prosecutor]," before the prosecutor said, "You're right[;] It's a bad case[]" and dismissed the case. Attorney Gonzalez further stated that he and Daniel "never even had an attorney/client communication" and that "there's nothing that I could use adverse that I learned from him because we had never had a communication." Attorney Gonzalez also advised the district court that Daniel was aware that Gonzalez was going to represent Hernandez in this case and had not voiced an objection. The district court denied the Government's motion to disqualify Gonzalez.

That afternoon, the Government renewed the motion with support from Daniel's attorney in this case. Daniel's counsel argued that his client risked being prejudiced by his former attorney's cross-examination if he was called to testify at trial. The district court replied that Attorney Gonzalez had explained that "he didn't even talk to [Daniel]" during the prior representation. Further, the district court stated that any cross-examination of Daniel by Attorney Gonzalez would be limited. The court then orally denied the Government's motion to disqualify Gonzalez a second time. The next day, the district court issued a written order denying the Government's motion. The district court concluded that Attorney Gonzalez's prior representation of Daniel did not present a conflict of interest because (1) Daniel's prior case was unrelated to the current case, (2) Gonzalez's representation of Daniel in the prior case had unambiguously ended before his representation of Hernandez began, (3)

4

Gonzalez's prior representation of Daniel was "extremely limited," and (4) Gonzalez had attested that he did not learn anything in his prior representation of Daniel that he could use to harm either Hernandez or Daniel.

Daniel did not testify at the ensuing trial, and the jury found Hernandez guilty on both counts.

For count 1, the cocaine conspiracy offense, the presentence report ("PSR") determined that Hernandez's base offense level was 26. U.S.S.G. § 2D1.1. The PSR then increased his base offense level by two levels for possession of a dangerous weapon—the handgun and "two AK-47 style rifles"—giving him an adjusted offense level of 28. *Id.* § 2D1.1 (b)(1). For count 2, the theft of government money offense, the PSR determined that Hernandez's base offense level was 6. *Id.* § 2B1.1. The PSR then increased his base offense level by four levels because the theft involved more than $10,000 and less than $30,000, *id.* § 2.B1.1(b)(1)(C), thereby giving him an adjusted offense level of 10. The PSR used the higher of Hernandez's two adjusted offense levels to determine his total offense level—28—and it then added a one-level multi-count adjustment pursuant to U.S.S.G. § 3D1.4. With a total offense level of 29 and a criminal history category of II, Hernandez's advisory sentencing range under the Guidelines was 97 to 121 months, according to the PSR.

The district court adopted the PSR and, finding no reason to depart from the Guidelines range, sentenced him to concurrent 120-month terms of imprisonment. The district court (1) assessed a fine in the amount of $2,500 and a $200 special assessment and (2) rendered a money judgment of forfeiture in the amount of $17,000. This appeal followed.

## II

### A

First, Hernandez claims that the district court erred when it determined that Attorney Gonzalez's prior representation of Daniel would not present an

actual conflict of interest at trial.  He contends that because Attorney Gonzales had recently represented Daniel and had discussed the present case with Daniel's wife, the district court should have held a *Garcia* hearing to determine whether Attorney Gonzalez had a conflict of interest and whether that conflict would prejudice Hernandez.  Hernandez further asserts that Attorney Gonzalez's failure to call Daniel as a witness provides evidence of a conflict of interest; he maintains that because Daniel was the only witness who could corroborate Hernandez's defense, the only explanations for Gonzalez's decision not to call Daniel were (1) the existence of a conflict of interest and (2) the district court's warning to Gonzalez not to take advantage of his prior representation of Daniel.  Accordingly, Hernandez asks us to remand proceedings to the district court so that it can conduct a *Garcia* hearing to determine whether the conflict adversely affected Attorney Gonzalez's performance at trial.

"The Sixth Amendment right to counsel includes the 'right to representation that is free from any conflict of interest.'" *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (quoting *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993)).  "As a general rule, a conflict exists when defense counsel allows a situation to arise that tempts a division in counsel's loyalties." *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008) (citing *Garcia-Jasso*, 472 F.3d at 243).  "If a defendant chooses to proceed with representation by counsel who has a conflict of interest, a district court must conduct what is commonly known as a '*Garcia* hearing' to ensure a valid waiver by the defendant of his Sixth Amendment right." *Garcia-Jasso*, 472 F.2d at 243 (citing *Garcia*, 517 F.2d at 278).  However, a district court only needs to "conduct a *Garcia* hearing if there is an actual conflict of interest," *id.* (citation omitted), as opposed to "'a speculative or potential' conflict." *Burns*, 526 F.3d at 856 (quoting *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005)).  A district court's

determination that an actual conflict did not exist is a mixed question of law and fact, which we review *de novo*. *Id.* (citations omitted).

To determine whether Attorney Gonzalez had an actual conflict of interest, "we must ask whether Attorney [Gonzalez] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether it was an actual conflict). *Id.* at 392 (citations omitted). Because Hernandez concedes that there is insufficient evidence in the record to determine whether the alleged conflict adversely affected Attorney Gonzalez's representation, we need only decide whether the alleged conflict was not merely hypothetical. *Id.*

"Joint representation does not necessarily create a conflict of interest." *United States v. Rico*, 51 F.3d 495, 508 (5th Cir. 1995). In such situations a non-hypothetical conflict only exists "when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000) (citations omitted). Deciding "whether a disqualifying conflict exists is highly fact-dependent." *Burns*, 526 F.3d at 856 (citation omitted). We have found that this determination depends on a number of factors, "including, . . . whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated." *Infante*, 404 F.3d at 392 (citing *Perillo*, 205 F.3d at 798–99).

We hold that the conflict here remained purely hypothetical. *Burns*, 526 F.3d at 857. First, Attorney Gonzalez represented to the district court that he did not learn any confidential information from his brief representation of Daniel in an unrelated state felony proceeding. While Hernandez asserts that it was

unreasonable for the district court to credit Attorney Gonzalez's representations, the district court reasonably found them credible due to the brevity of his prior representation and the fact that the two proceedings were unrelated. *See Perillo*, 205 F.3d at 799 ("Where, however, defense counsel's involvement in the prior representation was either transient or insubstantial, we have been less inclined to find an actual conflict.") (citation omitted).  Further, although Attorney Gonzalez's two relevant representations were close in time, his representation of Daniel had unambiguously ended before his representation of Hernandez began.  *Id.* at 798–799 ("Where . . . defense counsel's prior representation unambiguously terminated before the second representation began, the possibility that defense counsel's continuing obligation to his former client will impede his representation of his current client is generally much lower.") (citation omitted).

Hernandez contends that Attorney Gonzalez's decision not to call Daniel as a witness supports his assertion that Gonzalez's prior representation of Daniel created a conflict of interest.  At the hearing on the Government's motion to disqualify, the Government argued that Hernandez might want to call Daniel to testify regarding a statement he made to an investigator before he eventually pleaded guilty.  In the earlier statement, Daniel said that the brothers had always planned simply to steal the money from the confidential source—a statement that could have been used to support Hernandez's defense that the brothers never conspired to sell cocaine.  However, given the foregoing, the record does not support Hernandez's contention that Attorney Gonzalez refrained from calling Daniel to testify because of the alleged conflict.  That is, "[t]here is nothing to indicate that the failure [to call Daniel] was the result of . . . 'divided loyalties' which would result in an actual conflict as opposed to a tactical trial strategy." *Burns*, 526 F.3d at 857.

8

No. 10-51136

Accordingly, because Hernandez did not establish that Attorney Gonzales labored under a non-hypothetical conflict of interest, "we conclude that the district court did not err in failing to conduct a *Garcia* hearing." *Garcia-Jasso*, 472 F.3d at 245; *see id.* (holding that attorney did not have an actual conflict of interest because appellant's claims "rely on speculation and inferences that are unsupported by the record").

**B**

Second, Hernandez claims that the district court committed plain error when it calculated his total adjusted offense level under the Sentencing Guidelines. He asserts that the district court erroneously increased his offense level by employing a one-level multi-count adjustment pursuant to U.S.S.G. § 3D1.4. He contends that the district court's error increased his offense level from 28 to 29, which, when combined with his criminal history category, increased his advisory Guidelines range of imprisonment from 87–108 months to 97–121 months. The district court adopted the PSR, found no reason to depart from the Guidelines range, and sentenced Hernandez to concurrent 120-month terms of imprisonment.

Because Hernandez did not object to the district court's multi-count adjustment in the district court, we review his claim for plain error. To show reversible plain error, Hernandez must show a clear or obvious error that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes that showing, we have discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Hernandez claims that the district court committed clear error that affected his substantial rights by sentencing him to a term of imprisonment 12 months above the top-end of the proper Guidelines range. Further, he claims that the district court's error seriously affected the fairness, integrity, or public

reputation of the judicial proceedings because the court intended to give him a sentence within the Guidelines range, but due to the court's error, gave him a sentence one year above the top-end of the correct Guidelines range.

As the Government concedes, the district court committed clear error by employing a one-level multi-count adjustment to Hernandez's total offense level pursuant to U.S.S.G. § 3D1.4.  Hernandez was clearly not eligible for a multi-count adjustment under § 3D1.4 because his theft of government money offense was "9 or more levels less serious" than his cocaine conspiracy offense.  *See* U.S.S.G. § 3D1.4(c) (providing that courts should "disregard [offenses that are] 9 or more levels less serious than the Group with the highest offense levels" for the purposes of employing a multi-count adjustment); *see also United States v. Villegas*, 404 F.3d 355, 364 (5th Cir. 2005) (holding that district court committed clear error by committing an obvious error that caused it to impose a sentence that resulted from its incorrect application of the Guidelines).

In order to establish that his substantial rights were affected by this error, Hernandez must "show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." *United States v. Villegas*, 404 F.3d 355, 364 (5th Cir. 2005) (per curiam).[2] "[A]bsent additional evidence, a defendant has shown a reasonable probability that he would have received a lesser sentence when (1) the district court mistakenly calculates the wrong Guidelines range, (2) the incorrect range is significantly higher than the true Guidelines range, and (3) the defendant is sentenced within the incorrect range." *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011) (per curiam) (citations omitted).

---

[2] "As noted recently, our court has not fully resolved whether a different substantial-rights standard also remains in effect, *i.e.*, 'if the case were remanded, the trial judge could reinstate the same sentence.'" *United States v. Gaither*, 434 F. App'x 393 (5th Cir. 2011) (per curiam) (citation omitted).

No. 10-51136

In *Mudekunye*, we held that in cases where the correct and incorrect Guidelines ranges overlap, but the court imposes a sentence significantly above the top-end of the correct Guidelines range, the imposed sentence affects the defendant's substantial rights "where it is not apparent from the record that [the defendant] would have received an above-Guidelines sentence." 646 F.3d at 290 (quoting *United States v. John*, 597 F.3d 263, 285 (5th Cir. 2010)).

Here, similarly to *Mudekunye*, the correct and incorrect Guidelines ranges overlapped by 11 months, and the district court imposed a sentence 12 months higher than the top-end of the correct Guidelines range. *Id.* (holding that the district court's misapplication of the Guidelines affected the defendant's substantial rights where the "correct and incorrect sentencing ranges overlap[ped] by one month, [and the defendant] was sentenced well outside the one month overlap, 19 months above the correct range"); *see United States v. Carrizales-Jaramillo*, 303 F. App'x 215, 217 (5th Cir. 2008) (per curiam) (vacating sentence on plain error review where the correct and incorrect Guidelines ranges overlapped by one month and the court imposed a sentence one month higher than the overlap); *cf. Gaither*, 434 F. App'x at 393–94 (holding that Guidelines error did not warrant vacatur of defendant's sentence on plain error review where correct and incorrect Guidelines ranges overlapped by two months and the court imposed a sentence six months higher than the overlap).

Further, as in *Mudekunye*, there is no evidence in the record that suggests the district court would have imposed an above-Guidelines sentence of 120 months if the district court had considered the accurate Guidelines range—87-108 months. *Mudekunye*, 646 F.3d at 290 (citing *John*, 597 F.3d at 285). The district court merely adopted the PSR and found no reason to depart from the Guidelines range.

Although the correct and erroneous Guidelines ranges overlapped more significantly here than they did in *Mudekunye*, we find its reasoning persuasive.

11

No. 10-51136

In short, given (1) the substantial, 12-month disparity between the top-end of the correct Guidelines range and the sentence imposed and (2) the lack of any indication in the record that the district court would have imposed an above-Guidelines sentence if it had considered the correct range, we conclude that Hernandez has shown a reasonable probability "that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." *Villegas*, 404 F.3d at 364. Therefore, he has demonstrated that the district court's error affected his substantial rights. *Mudekunye*, 646 F.3d at 291.[3]

Because we have determined that Hernandez has satisfied the first three elements of plain error, we must decide whether to exercise our discretion to remand for resentencing. We may only exercise our discretion to correct the district court's plain error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135. "[U]ltimately, whether a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings is dependent upon the degree of the error and the particular facts of the case." *John*, 597 F.3d at 288.

Although we have been "generous with remand" when employing the fourth prong of the plain error test in the sentencing context, "we are not convinced that the case law on this point is settled or as categorical as language in some cases might make it seem." *United States v. Ellis*, 564 F.3d 370, 378 & n.44 (5th Cir. 2009) (collecting cases). We are also mindful of "our precedent declining 'to adopt a blanket rule that once prejudice is found under the [third plain error prong], the error invariably requires correction.'" *United States v. Escalante-Reyes*, — F.3d —, 2012 WL 3024195, at *7 (5th Cir. 2012) (en banc)

---

[3] We take no position regarding the point at which a sentence becomes materially or substantially above the proper Guidelines range. *See John*, 597 F.3d at 289. We also take no position regarding whether additional overlap between the correct and incorrect Guidelines ranges would affect our analysis. *See United States v. Price*, 516 F.3d 285, 289 n.28 (5th Cir. 2008).

No. 10-51136

(alteration in original) (quoting *United States v. Reyna*, 358 F.3d 344, 352 (5th Cir.2004) (en banc)).

Nonetheless, as in *Mudekunye*, we conclude that under the particular facts of this case, "[t]he substantial disparity between the imposed sentence and the applicable Guidelines range warrants the exercise of our discretion to correct the error." 646 F.3d at 291; *see John*, 597 F.3d at 289 (holding that it is appropriate to exercise our discretion to vacate and remand for resentencing "when there is no indication that the district court would have selected the sentence regardless of the applicable Guidelines range, and the sentence imposed is based on an erroneously calculated Guidelines range, . . . at least when the sentence is materially or substantially above the properly calculated range"). Moreover, the district court's error was particularly obvious, involving a straightforward misapplication of the plain language of the Guidelines. *Cf. John*, 597 F.3d at 290 (Smith J, dissenting) ("The panel majority declares this forfeited error to be 'plain,' although it takes five manuscript pages to explain why it was error at all."). Lastly, even though the record of Hernandez's offense contains some aggravating elements, those elements do not persuade us to refrain from exercising our discretion to remand for resentencing under the particular facts of this case. *Cf. Gaither*, 434 F. App'x at 394 (holding that offense did not warrant remediation where record showed it "involv[ed] domestic violence, drugs, and a firearm; a leadership role within a violent gang; and pending charges for possessing a deadly weapon while in prison") (citations omitted).

## III

We AFFIRM Hernandez's convictions. For the reasons stated above, we VACATE Hernandez's sentence and REMAND for further proceedings.

No. 10-51136

JERRY E. SMITH, Circuit Judge, dissenting.

I respectfully dissent, although the majority correctly decides Hernandez's conflict-of-interest claim and properly holds that the district court committed an obvious error that likely affected Hernandez's substantial rights when it added one point to the guideline calculation for a multi-count indictment under U.S.S.G. § 3D1.4. At the fourth prong of plain-error analysis, this court should not exercise its discretion to reverse, because in no way does the error "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks and altera-tions omitted). The majority perpetuates this court's unseemly habit of "being far more permissive on plain-error review than the Supreme Court and common sense allow." *United States v. Escalante-Reyes*, No. 11-40632, 2012 WL 3024195, at *13-17 (5th Cir. July 25, 2012) (en banc) (Smith, J., dissenting).

I.

Reversal on plain error is "exceptional,"[1] "used sparingly,"[2] "rare,"[3] and "difficult, as it should be,"[4] reserved for only the most "egregious,"[5] "serious,"[6] and "grievous"[7] errors. We should thus exercise our discretion to reverse only

---

[1] *United States v. Atkinson*, 297 U.S. 157, 160 (1936).

[2] *United States v. Young*, 470 U.S. 1, 15 (1985) (citing *United States v. Frady*, 456 U.S. 152, 163 & n.14 (1982)).

[3] *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004).

[4] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[5] *Young*, 470 U.S. at 15.

[6] *United States v. Padilla*, 415 F.3d 211, 223-24 (1st Cir. 2005) (en banc).

[7] *United States v. Robinson*, 627 F.3d 941, 956 (4th Cir. 2010).

in "blockbuster"[8] cases in which the error is so flagrant that it "undermine[s] the fundamental fairness"[9] of our system and offends "core notions of justice"[10] such that "the trial judge and prosecutor [were] derelict in permitting it."[11]  "An error that warrants reversal despite the contemporaneous-objection rule is one that, if left uncorrected, would shock the conscience of the common man, serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge."  *Id.* at \*16 (Smith, J., dissenting).

This court has nonetheless adopted an approach that is "generous" and "permissive,"[12] reversing on plain-error review over 180 times since *Olano* was decided and in over 72% of the cases in which the fourth prong was reached. *Id.* at \*15 (Smith, J., dissenting).  This lax application of plain-error review not only runs afoul to the Supreme Court's directives, but also severely undermines this court's longstanding Contemporaneous Objection Rule, which

> ensures full development of the record, prevents strategic timing of objections meant to secure a second bite at the apple, gives incentives for the diligence and zealousness of trial counsel and the defendant, minimizes the sandbagging of trial courts, promotes judicial economy by reducing appeals and remand, and safeguards the district court's role as the court of first instance in our federal system.

*Id.* (citations and internal quotation marks omitted).  Unfortunately, the panel majority is complicit in this "unwarranted extension" of "the Rule's careful bal-

---

[8] *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995).

[9] *Young*, 470 U.S. at 16.

[10] *United States v. Gonzalez-Huerta*, 403 F.3d 727, 739 (10th Cir. 2005) (en banc).

[11] *United States v. Vasquez*, 267 F.3d 79, 87 (2d Cir. 2001) (citations omitted); *see also Frady*, 456 U.S. at 163.

[12] *United States v. Ellis*, 564 F.3d 370, 378 & n.44 (5th Cir. 2009).

No. 10-51136

ancing," *Young*, 470 U.S. at 15, which "encourages litigants to abuse the judicial process and bestirs the public to ridicule it." *United States v. Johnson*, 520 U.S. 461, 470 (1997) (citation omitted).

## II.

Although tacitly acknowledging the importance of the fourth prong, the majority regrettably adheres to the generous and permissive pattern of reversal on plain-error review. Though our caselaw makes the result none too surprising, "[t]hese holdings do not compel a similar conclusion here, however, because the fourth prong of plain-error review is meant to be applied on a case-specific and fact-intensive basis."[13]

It is uncontested that the district court clearly and obviously erred by adding one point to Hernandez's sentence calculation for a multi-count enhancement under U.S.S.G. § 3D1.4. His miscalculated guideline range is 97-121 months, when it should have been 87-108 months. He received 120 months, one year above the top of his correctly calculated range.

The first two prongs of plain-error review are easily met. Although there is some question whether Hernandez's substantial rights were affected, under our precedent a miscalculated range that likely affected his sentence by at least twelve months, with no evidence that the district court was willing to depart from the guideline range, likely satisfies the third prong.[14] The more difficult

---

[13] *United States v. Poitra*, 648 F.3d 884, 890 (8th Cir. 2011) (quoting *Puckett*, 556 U.S. at 142) (internal quotations and alterations omitted); *see also United States v. Mudekunye*, 646 F.3d 281, 301 (5th Cir. 2011) (per curiam) (Barksdale, J., dissenting); *United States v. John*, 597 F.3d 263, 291 (5th Cir. 2010) (Smith, J., dissenting).

[14] *See United States v. Puckett*, 556 U.S. 129, 135, 142 n.4 (2009) (stating that "the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings . . . . When the rights acquired by the defendant relate to sentencing, the 'outcome' he must show to have been affected is his sentence.") (citations and quotation marks omitted); *see also Mudekunye*, 646

(continued...)

16

No. 10-51136

question concerns the fourth prong: whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings. The majority rules that we should exercise our discretion and reverse for three principal reasons.

First, the majority finds that our precedent supports reversal because of the "substantial disparity between the imposed sentence and the applicable Guidelines range" (quoting *Mudekunye*, 646 F.3d at 291). In *Mudekunye*, the court addressed a sentence 19 months higher than the highest possible sentence in the correct range; here, the sentence is 12 months higher than the top of the applicable range. And in *John*, 597 F.3d at 285, the difference between the sentence and the top of the applicable range was 21 months.

Of course, this case presents a closer call than *Mudekunye* and *John*, because the difference between Hernandez's likely sentence under the correct range and his actual sentence—12 months—is substantially less (19 months and 21 months, respectively). Although in some cases this court has found even smaller sentencing disparities, such as one or three months, to have met the fourth prong,[15] those decisions are unpublished and therefore not precedential.[16]

The only published case cited by either side that presents a weaker case than the instant one, yet still met the fourth prong, is *United States v. Price*, 518 F.3d 285 (5th Cir. 2008)—where this court reversed even though the sentence was within the correct guideline range—because, in the court's judgment, the error "clearly affected the defendant's sentence." *Id.* at 290 (internal quotation marks omitted). This court, however, has since called into question a broad

---

[14] (...continued)
F.3d at 289-91.

[15] *See United States v. Carrizales-Jaramillo*, 303 F. App'x 215, 218 (5th Cir. 2008); *United States v. Severin*, 221 F. App'x 299, 303 (5th Cir. 2006).

[16] Though *Escalante-Reyes* overturned a sentence *below* the correct guideline range, it is distinguishable, because it involved *Tapia* error, not incorrect guideline calculation. *See Escalante-Reyes*, 2012 WL 3024195, at *5-7.

reading of *Price*.[17]

Weighing against the majority's position, in *United States v. Gaither*, 434 F. App'x 393, 394 (5th Cir. 2011), this court found that a six-month difference between the sentence and the top of the correct range did not warrant reversal under the fourth prong, considering that the case involved "an offense involving domestic violence, drugs, and a firearm; a leadership role within a violent gang; and pending charges for possessing a deadly weapon while in prison." We found similarly in *Davis* that the error failed to meet the fourth prong—even where the calculated range was 15-21 months, the correct range was 6-12 months, and the sentence imposed was 24 months—in part because the "sentence [was] well within the statutory maximum and was rendered after Davis was found violating numerous terms of his supervised release and apparently planning a return to his prior criminal activities." *Davis*, 602 F.3d at 645, 650-52.

In sum, this court's published decisions have not found that a disparity as small as the difference between a nine-year and a ten-year sentence is so substantial as seriously to affect the fairness or integrity of the judicial system. Indeed, in *Davis* we found that a twelve-month disparity that consisted of a larger proportion of the sentence than in the instant case did not warrant reversal, albeit in a case in which the district court had upwardly departed. Nevertheless, as stated before, these numbers alone should not determine whether we should exercise our discretion, because the inquiry is fact-intensive and case-sensitive, so "we are not tethered to what other panels of this court have done in deciding whether to exercise their discretion in other cases, similar or not." *John*, 597 F.3d at 291 (Smith, J., dissenting).

Second, the majority justifies reversal under the fourth prong because the

---

[17] *See Davis*, 602 F.3d at 651 n.12 (advising that "we should resist the temptation to overread *Price* to categorically require remand wherever a reasonable probability of a lesser sentence is found").

No. 10-51136

error was particularly obvious. Though the obviousness of the error may weigh in favor of reversal on the fourth prong in some cases,[18] the more obvious the error, the more concerning it is that neither the defendant nor his counsel bothered to take the time to review the PSR carefully and object to a mistake that affects the sentence.

Finally, the majority justifies reversal because, "even though the record of Hernandez's offense contains some aggravating elements, those elements do not persuade us to refrain from exercising our discretion to remand for resentencing under the particular facts of this case." "But the majority's approach turns the fourth prong on its head." *Escalante-Reyes*, 2012 WL 3024195, at *19 (Smith, J., dissenting). It makes remediation the norm that must be otherwise precluded by a showing of aggravating elements rather than upholding the sentence unless the defendant "can show a particularly sympathetic case in which the demands of justice so *seriously* undermine the integrity of our system that we are willing to depart from our well-established procedure to correct it." *Id.* The majority thus repeats the common mistake of "presum[ing] plain error unless the prevailing party can prove otherwise," *id.*, when the Supreme Court has held, to the contrary, that the burden of proving the fourth prong is on the party seeking reversal, *United States v. Vonn*, 535 U.S. 55, 63 (2002). Further, as demonstrated below, the majority is factually incorrect: The aggravating aspects of Hernandez's offense reveal that his sentence does not offend "core notions of justice." *Gonzalez-Huerta*, 403 F.3d at 739.

In this fact-intensive inquiry, we need to review the salient facts with care: Lorenzo Guerra, a confidential informant to the FBI, learned from Juan Rosales that Hernandez was selling large amounts of cocaine. Rosales stated that his aunt could bribe a Border Patrol agent to smuggle any amount of drugs Guerra

---

[18] *See Escalante-Reyes*, 2012 WL 3024195, at *20 n.25 (Smith, J., dissenting).

No. 10-51136

wanted to purchase. Guerra visited Hernandez at Hernandez's house, where one of Hernandez's customers showed Guerra an ounce of cocaine he had recently purchased from Hernandez. Hernandez then asked a six-year-old girl to retrieve another ounce of cocaine from a back room to show Guerra, informing him that he could sell Guerra as much cocaine as he wanted to buy, but Guerra only agreed to buy one kilogram.

A couple of days later, Guerra again spoke to Rosales, who asked whether he was sure he wanted to buy only one kilo. Guerra responded that if the first kilo was good, he would consider buying five or six—a statement he repeated to Hernandez's brother. Guerra met a second time with Hernandez, who showed him an additional one-ounce pack of cocaine, a .45 Ruger semi-automatic handgun, and two AK-47 assault rifles, explaining that he also could sell Guerra similar assault rifles and handguns. According to the PSR, which was adopted in full by the district court, "Hernandez claimed to have a contact that could steal guns directly from a manufacturer in Amarillo, Texas. Hernandez further stated he had just recently sent thirty stolen AR-15-style rifles to Ciudad Juarez, Mexico, to friends that were responsible for causing 'all the mess' in Ciudad Juarez."

The next week, Guerra met with Hernandez's brother, Daniel, to complete the transaction: one kilogram of cocaine for $17,000. When Guerra handed over the money, which was provided by the FBI, Daniel entered a waiting car and absconded without handing over the cocaine. Later, Guerra spoke to a neighbor connected to the drug-smuggling community, who informed him that Hernandez owed a Mexican drug cartel $150,000 and "was stealing money from whomever they could to pay their debt," doing "anything to steal money, including murder." Before he was arrested, Hernandez had numerous conversations with Guerra to smooth things over, claiming that Daniel should not have stolen the money. After arrest, however, Hernandez admitted to being the architect of the larcenous scheme.

No. 10-51136

This is not Hernandez's first run-in with the law. In 1994, he was convicted of burglarizing a vehicle and in 2004 of stealing thousands of dollars worth of merchandise and engaging in organized crime. He has also had numerous other charges filed against him, including possession of cocaine and marihuana, unlawfully carrying a weapon, harassment, theft, and disorderly conduct. As a result, Hernandez had a criminal history category of II, which, combined with an offense level of 29, yielded a guideline range of 97-121 months. The sentence was 120 months. Because the one-point multi-count enhancement was erroneously applied, the offense level should have been 28, resulting in a range of 87-108 months. The statutory maximum for the cocaine offense of which Hernandez was convicted is 40 years. 21 U.S.C. § 241(b)(1)(B).

Considering these facts—(1) Hernandez's desire to sell Guerra as much cocaine as he wanted,[19] (2) a conspiracy that may have involved bribing a federal agent, (3) Hernandez's use of a six-year old girl in committing the offense, (4) his possession and attempted sale of assault rifles, (5) his admitted connection with the horrific violence in Ciudad Juarez, (6) a sentence well below the statutory maximum,[20] and (7) his pattern of criminal conduct—the mistaken addition of one to the offense level, which increased the *advised* sentence by just 10%, from nine years to ten—does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Judge Briones was not so incompetent or caprici-

---

[19] Had, for example, Hernandez continued in the conspiracy and tried to sell Guerra five or six kilograms of cocaine, his base offense level would have been six points higher. U.S.S.G. § 2D1.1(c)(4). Indeed, if Hernandez had attempted to sell that much cocaine, his statutory *minimum* sentence would have been ten years. *See* 21 U.S.C. § 241(b)(1)(A).

[20] *See Davis*, 602 F.3d at 651 ("On this record, we decline to conclude that the district court's imposition of a sentence of 24 months of imprisonment and two years of supervised release—particularly where a statutory maximum of 36 months of imprisonment and two years of supervised release was an available punishment—seriously affects the fairness, integrity or public reputation of judicial proceedings.") (citation, internal quotation marks, and alterations omitted).

ous as to have committed a dereliction of his duties by imposing this sentence, nor was

> this unpreserved, forfeited error so particularly egregious, grievous, and serious, and this case so rare and exceptional, that [I am] willing to abrogate our most basic and longstanding rules of procedure to correct it because it generally undermines the fundamental fairness of the courts and offends core notions of justice.

*Escalante-Reyes*, 2012 WL 3024195, at *20 (citations and internal quotation marks omitted) (Smith, J., dissenting).

The majority should not have exercised its discretion to reverse on the fourth prong.  The sentence should be affirmed, so I respectfully dissent.